### In re WRAY.

(Circuit Court of Appeals, Second Circuit. May 9, 1916.)

No. 250.

1. BANKRUPTCY ☞342½—PROCEEDINGS—REVIEW OF REFEREE'S ORDERS.

Where the referee died after entering an order disallowing the claim, but before he had perfected his findings, the District Judge properly made an order directing the referee's successor to certify the entire proceeding, together with the testimony taken and the exhibits introduced, to the District Court, where the case would be tried de novo.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. ☞342½.]

2. CONTRACTS ☞141(1)—IMMORAL CONSIDERATION—PRESUMPTION.

In the absence of proof, an illegal or immoral consideration for advances should not be presumed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 461, 1760, 1761; Dec. Dig. ☞141(1).]

3. BANKRUPTCY ☞340—CLAIMS—EVIDENCE—SUFFICIENCY.

Evidence in a contest of a claim against the estate of a bankrupt by one with whom the bankrupt prior to her marriage had maintained illicit relations *held* to warrant a finding that advances after her marriage were not tainted with the illegality of the consideration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. ☞340.]

4. BANKRUPTCY ☞325—CLAIMS—CREDITS.

Where claimant made advances to the bankrupt to enable her to buy a motor car, and the bankrupt, being unable to repay the advances, delivered the car to claimant, the amount received by claimant from the sale of the car should be credited on the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 512; Dec. Dig. ☞325.]

Appeal from the District Court of the United States for the District of Connecticut.

In the matter of the bankruptcy of Lillian B. Kennedy Wray. From an order allowing in part a claim of Martin Zimmerman against the estate, James E. Wheeler, as trustee, appeals. Modified and affirmed.

James E. Wheeler, trustee of the estate of Lillian B. Wray, a bankrupt, appeals from an order allowing, in part, a claim of Martin Zimmerman against her estate, which order was entered in the District Court for the District of Connecticut July 20, 1915. The claim as originally filed was for $86,677; it was allowed for $21,300.

Samuel E. Hoyt, of New Haven, Conn., for appellant.

George E. Beers, of New Haven, Conn., John M. Gardner, of New York City, and Arvine, Beers & Woodruff, of New Haven, Conn., for respondent.

Before COXE and WARD, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

COXE, Circuit Judge. [1] This case is sui generis in that the referee died after he had entered an order disallowing the Zimmerman

claim but before he had perfected his findings. In these circumstances the District Judge made an order directing the successor of the deceased referee to certify the entire proceeding, together with the testimony taken and the exhibits introduced, to the District Court where the case was tried de novo. Zimmerman whose entire claim was disallowed was entitled to have the referee's finding reviewed by the District Court. As the referee had made and signed an order dated January 24, 1914, disallowing the claim, the verified petition of Zimmerman filed February 3, 1914, and the amendment of the petition for review, apparently filed February 12th, thereafter, were in time and in proper form to present the questions in controversy. Zimmerman was entitled to review the referee's order but as no findings had been made by the referee there was insufficient proof to show the grounds of his decision. However, the judge is the ultimate arbiter in bankruptcy matters; the referees assist and advise him but the final action is that of the court. In the present case it was eminently proper that the District Judge should review the case upon the facts and law. Indeed the circumstances were such that it was his duty so to do. If he had adopted the conclusion of the referee without examination, Zimmerman would have a right to complain that he had never had his day in court.

[**2, 3**] The District Judge allowed the claim to the extent of $21,300 which was the amount advanced by Zimmerman to the bankrupt after her marriage to Wray and after the illicit relations between her and Zimmerman had ceased. The finding that the money advanced after the 29th of January, 1912, was a loan is supported by the evidence and indeed there was no sufficient reason to suspect that it was advanced to perpetuate the illegal relations existing before the marriage with Wray.

The amount received by the bankrupt from Zimmerman on and after January 29, 1912, was $21,300, the last advance being in May, 1912, after the marriage to Wray which was in June, 1911, and after the improper relations with Zimmerman had ceased.

There was nothing illegal in his advancing money to her to enable her to continue the business. That he should have lent her the money to keep the business, in which he had invested a large sum, from going into bankruptcy is plausible and natural. That he should have given it to induce her to keep up their former relations is, in view of the marriage with Wray, highly improbable.

No collateral agreement express or implied is shown regarding these advances. It may be that they were made as appears on the face of the transactions to keep up and save a business in which Zimmerman had invested so heavily. In the absence of proof, an illegal or immoral consideration should not be assumed. There is nothing to show that the advances which make up the $21,300 were made to continue the illicit relations. This record presents a deplorable situation in which it is difficult from a mere reading of the testimony to determine where the truth lies, but weighing it as best we may, we cannot resist the conclusion that the advances which make up the sum

in controversy, with the exception to be hereafter noted, were loans and not gifts.

[4] The amount loaned to the bankrupt on April 3, 1912, was to enable her to purchase a motor car. She did purchase a car and agreed to return the money to Zimmerman; this she did not do but she did return the car to him, which he sold for $1,600. He was asked:

"Q. Now is it your purpose to credit her with what you have received for it? A. $1,600 without the Edison batteries."

This amount has not been credited; we think it should be, thus reducing the amount of the claim to that extent. The order of July 20, 1915, as so modified, is affirmed.

⊙⎯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes