### O'GRADY et al. v. CHAUTAUQUA BUILDERS' SUPPLY, Inc., et al.

District Court, W. D. New York. June 12, 1929.

Messer & Stearns, of Buffalo, N. Y., for plaintiffs.

Jackson, Herrick, Durkin & Leet, of Jamestown, N. Y., for Chautauqua Builders' Supply, Inc.

Edwin G. O'Connor and Arthur S. Tennant, both of Westfield, N. Y., for State Bank of Brocton.

HAZEL, District Judge. This action to recover a preferential transfer or sale under section 60b of the Bankruptcy Act (11 USCA § 96), was brought by the trustee in bankruptcy of Neilans Bros., who, as partners and individually, were adjudicated bankrupt June 9, 1923, on an involuntary petition; the preference having been given and received, as the trustee claims, by the defendant Chautauqua Builders' Supply, Inc. (called the Supply Co. for short), within four months before the involuntary petition was filed. The defendant State Bank of Brocton was joined on the ground that it claims a portion of the property transferred under a chattel mortgage. The complaint alleges the engagement of the firm in contracting work, especially in the construction and repair of road or highway pavements at Ripley and Silver Creek, N. Y., under contract with the state of New York, and that, while insolvent, owing provable debts to various persons, including the defendant Supply Co., on May 11, 1923, transferred all of their property and assets by bill of sale, in writing, to the Supply Co. and surrendered immediate possession thereof; and also that the bankrupt at the same time entered into an agreement in writing by which the transferee agreed to indorse and discount a note of $45,000, the proceeds to be deposited in the National Chautauqua County Bank to the credit of the firm and to enable paying certain existing indebtednesses to

the Supply Co. and others, amounting in the aggregate to $23,600, and the balance to be used to complete the construction of said highways. It is also alleged that at such time the Supply Co. was aware of the insolvent condition of the bankrupt and had reasonable cause to believe that it was receiving a preference; and further that the legal effect of the bill of sale and agreement was to enable the Supply Co. to obtain a greater percentage of its debt than any other creditor of the same class.

The answer of the Supply Co. denies that the firm of Neilans Bros. was insolvent at the time, and avers that the advances made by it, under the agreement of May 10, 1923, were in good faith based on security which, however, as subsequently appeared, was insufficient to pay its claim against the bankrupt and the advances for completing the highway constructions; also, that the three steam shovels covered by the chattel mortgage to the defendant State Bank of Brocton were included in the bill of sale and were bought upon contracts of conditional sale; and that subsequently the Supply Co. acquired by assignment the rights of the seller under the conditional sales contract or lien upon which there is unpaid $2,200.

The answer of the State Bank alleges that more than four months prior to bankruptcy, the bankrupts, on three promissory notes, borrowed $15,000, upon which $866.30 has been paid; and to secure the sum of $10,000 the bankrupts on August 29, 1922, gave a chattel mortgage covering three steam shovels, collateral to the notes, and subject to a prior lien of $8,000. The chattel mortgages were filed and subsequently renewed. It is further alleged that on March 24, 1923, after bankruptcy intervened, the State Bank agreed with the Supply Co. and Chapman & Graham, Inc., that since both claimed title to the steam shovels, under its prior lien, they should be sold under order of the court, free and clear of any and all liens, the proceeds to stand in lieu thereof until the disputed rights to the shovels were determined in this action; that two of the shovels were subsequently sold by the Supply Co. and the proceeds deposited in the National Chautauqua County Bank, while the third shovel remains unsold and is in the custody of the Supply Co. It is demanded that the proceeds of sale of the two shovels sold, and the possession of the shovel unsold be surrendered to the defendant bank.

■ By stipulation of the parties, there was a reference to the referee in bankruptcy, as special master, by order of this court, to hear, try, and determine the issues, who, after taking the testimony and hearing arguments, but before rendering a decision, died from accidental causes; and subsequently, on motion, a hearing de novo, on the testimony so taken and documentary exhibits, was had before this court.

There was no irregularity in thus taking over the hearing and determination of the issues, since, in any event, the decision of the special master was, on exceptions, reviewable by this court. In re Wray (C. C. A.) 233 F. 418.

That Neilans Bros. were in fact insolvent and aware of their financial condition when the assets and properties were transferred to the Supply Co. does not, I find, admit of serious controversy. Although their insolvency at the time of transfer is denied by the Supply Co., the denial is wholly based on a statement jointly made by the bankrupts as to their assets and liabilities which indicated a margin of solvency. It was, however, elicited that the statement did not contain their entire liabilities. Various claims against them, and two unpaid judgments that had been previously obtained, were omitted. Had all their debts been included in the statement, insolvency within the meaning of the Bankruptcy Act would have been apparent.

■ Accordingly the main question presented is whether the Supply Co., in receiving the bill of sale and entering into the contract providing for payment of its claim of $9,300, knew or had reasonable cause to believe that insolvency existed and that a preference would result from the transfer and agreement. This question obviously can only find solution in the proofs. The burden rested upon the trustee to satisfy the court that the transferee on May 10th and 11th, respectively, had reasonable cause for believing that insolvency existed or was imminent; and that, as reasonably prudent persons, they were required by the facts and circumstances to make investigation and inquiry as to the financial condition of the partnership; and that the result of the transfer would have imparted reasonable grounds for believing that an unlawful purpose would be effected.

The existence of mere suspicion or knowledge subsequently ascertained is insufficient to sustain the essential elements upon which the recovery of a preferential payment depends. Nichols v. Elken (C. C. A.) 225 F. 689; Brookhelm v. Greenbaum (D. C.) 225 F. 635. There are often transfers of money and property which are rated as

preferences but which are not rightly recoverable, since recovery must be based upon facts to support the assertion of knowledge on the part of the creditor or reasonable cause to believe that insolvency existed at the particular time of the transaction. Indeed, there must be facts sufficient to apprise an ordinarily cautious person that inquiry would inform him of the insolvent condition of the bankrupt, and that the result of the transfer within four months before filing the petition would inevitably result in a preference under section 60 of the Bankruptcy Act (11 USCA § 96). Grandison v. Nat. Bank (C. C. A.) 231 F. 800; Coder v. McPherson (C. C. A.) 152 F. 951; Dean v. Davis, 242 U. S. 441, 37 S. Ct. 130, 61 L. Ed. 419. That the bankrupts had in mind giving a preference to rid themselves of a troublesome contract with the state, or one of doubtful financial advantage, was not enough, unless the transferee had reason to believe that a preference was intended. The Supply Co. had no more knowledge of the affairs of the bankrupts than they disclosed to it at the time of the transfer, and the evidence shows that it relied upon the statement of assets and liabilities in taking over the completion of the work. It was taken over, as testified by Mr. Tiffany, to realize sufficient money to pay the indebtedness to the Supply Co. and to earn $5,000, which it was to receive for its services. Not only was reliance placed upon the statement, but prior thereto, in the year 1922, Tiffany, the secretary of the Supply Co., went to an officer of the Lafayette Bank, where the bankrupt firm maintained an account, and was assured of their reliability and that they were considered worth $150,000. He did not know, he said, that in December, 1922, the president of the Lafayette Bank sued the firm to recover $8,000, nor that judgment had been entered against them on the same day that the contract and bill of sale were signed; and, he added, if he had been informed, he would not have entered into the arrangement or undertaken the completion of the work. As bearing upon the truthfulness of his testimony, it seems to me worthy of consideration, as to whether a preference was designed, that Neilans Bros., for a number of years, had been engaged in state road building, giving substantial bonds for proper fulfillment of their contracts with the state. Large expenditures are commonly known to be involved in these enterprises, generally necessitating borrowing at banks and assigning estimated amounts due the road builder from the state or county as the

work progresses, or giving securities for loans or liens on funds, and paying indebtednesses for supplies when estimates were paid, or when the paving was completed. It is true the Supply Co. knew of the financial straits of the bankrupts; that they were in need of funds to continue the work; and that they owed the Fredonia National Bank for advances, and were indebted to others. But they nevertheless indorsed a note for $45,000, discounting the same at the National Chautauqua County Bank to obtain sufficient funds to continue the work. It practically took over the Neilans' uncompleted contract, agreeing to return any surplus to the bankrupts—all in consideration of the transfer and compliance with the specified provisions. It was testified, however, that the Supply Co. lost money in the venture and sustained a net loss of over $60,000. The manner in which this loss was sustained is not clear from the evidence.

Although payment of the bankrupts' indebtednesses to the Supply Co. was included in the agreement, as heretofore shown, the same to be paid out of the discounted promissory note of $45,000, the essential purpose of the transaction, no doubt, was to secure advances to complete the work the bankrupts were unable to complete. If the arrangement was planned by the bankrupts and the transferee because insolvency was imminent, or if the transaction was entered into on the part of the Supply Co. in bad faith, the circuity of the arrangement would not defeat the action. I incline strongly, however, to the belief that the defendant Supply Co. would not have ventured its liability as it did, had it known of the insolvency or entertained a reasonable ground for believing that insolvency was imminent. It is therefore found that the bill of sale of the machinery was not voidable as a preference under section 60b, and that insufficient evidence has been adduced to establish a voidable preference. It is a general rule that even though it were shown that the Supply Co., a creditor, was aware of the bankrupt's insolvency, yet if it honestly believed that the assets, as set forth in the statement, and anticipated gain on completion of the work, would realize enough to pay the debts in full, its mere knowledge as to insolvency, standing alone, would not constitute reasonable grounds for believing that the transfer in question would effect a preference. Kennard v. Behrer (D. C.) 270 F. 661; Matter of Gaylord (D. C.) 225 F. 234.

Inasmuch as I deem that it has not been proven that the Supply Co. was cognizant

of the bankrupts' insolvency at the time of the delivery of the bill of sale, or had substantial reasons for believing that it was being favored, it follows that the complaint, in so far as it relates to recovery by the trustee, must be dismissed.

■ There is, however, another question arising from the pleadings relating to the claim or chattel mortgage lien of the State Bank of Brocton to three steam shovels, which were included in the bill of sale to the Supply Co. These articles were subsequently sold, under stipulation of the various parties claiming liens thereon, on condition that the proceeds be deposited in the National Chautauqua County Bank, subject to the order of the court. The point contended by the Supply Co. that jurisdiction is lacking to make disposition of this fund is overruled. Jurisdiction of the parties claiming the fund has been rightly obtained, and, in my opinion, this court has power to afford complete relief in relation thereto. 25 C. J. § 11, p. 693.

In Park v. N. Y., etc., R. Co. (C. C.) 70 F. 641, Judge Lacombe, in an equity case, ruled that jurisdiction was not lost as to all the parties, even though the original or main defendant elected not to continue to resist complainant's demands; the court saying that when property is in the actual possession of the federal court, the right to decide conflicting claims as to its ultimate possession and control remains. This holding, by analogy, applies and is also supported by other adjudications.

In this case there was a direct issue raised by the answers of the different defendants with relation to the ownership of the steam shovels and the prior lien thereon of the bank. The validity of the chattel mortgage covering the steam shovels and its proper filing and renewal are not disputed. The shovels were sold by the Supply Co., and bid in by it. At such time Graham & Chapman, presumably acting for the Supply Co., had bought the existing lien or claim of the Erie Steam Shovel Company, paying therefor $1,209.80. Prior thereto, the contesting claimants entered into an agreement (Exhibit J) conferring the right upon the Supply Co. to sell the shovels on condition that the proceeds be deposited in the above-mentioned bank, and retained until the determination of the rights of the parties herein. The Supply Co., however, did not deposit the proceeds of sale, but kept it, and now maintains that the expense of using the shovels and disposing of them, including payment of the claim arising from the conditional sales contract, was greater than the proceeds realized on the sale. I have considered the contention with relation to such expenditures and find that a large amount was incurred before the date of the agreement with the State Bank, and that other items are not proper charges or set-offs. Accordingly, I find that the receipts realized on the sale and use of the shovels in question, subsequent to March 24, 1924, amounted to $9,180, while the disbursements, including the prior lien or claim, amount to $1,311.33.

The claims of the Supply Co. for salaries and item of legal expenses are disallowed.

Since in the item of receipts for use of the shovels the amount of $1,580 is included, it would seem fair to make a reasonable deduction for necessary repairs and labor pertaining to such use, but I find difficulty in determining any amount or asserted claim. The statement (Exhibit 9) and ledger sheet were not sufficiently explanatory as to labor and repairs, and I have found no definite testimony given in relation thereto.

The shovel, No. 1298, was sold for $3,500, to one Benedict, who failed to pay the full purchase price. That only $950 was paid thereon, and the balance secured by a chattel mortgage which has not as yet been paid, does not relieve the Supply Co. from accounting for the total amount of the purchase price.

My conclusion is that the Supply Co. is indebted, under the agreement (Exhibit J), to the State Bank of Brocton in the sum of $7,868.67, an amount realized over and above expenses; and that, as to the trustee, the complaint is dismissed.

A decree may be entered with costs in favor of the State Bank of Brocton in conformity with the expressed findings.