## GIFFIN v. VOUGHT.
### VOUGHT v. GIFFIN et al.
### Nos. 220, 221, Dockets, 21280, 21281.

United States Court of Appeals
Second Circuit.
May 20, 1949.

David S. Romanov, of New York City, for appellant.

Max Schwartz, of Brooklyn, N. Y., for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

These two appeals by Dorothy C. Giffin, wife of Vere B. Giffin, bankrupt, primarily concern or grow out of her claims to the ownership of certain property alleged by the bankruptcy trustee to be assets of the bankrupt. The first appeal is from the district court's affirmance of an order of a bankruptcy referee expunging the wife's claims against the estate; the second is from the summary judgment granted by the court in the trustee's civil action to recover the assets. The property in question consisted of the home of the couple at Garden City, Long Island, a farm located in Indiana, and a deposit in the Hempstead Bank, Hempstead, New York. It is the trustee's contention that all three were held by Mrs. Giffin as the "agent, dummy and instrumentality" of the bankrupt and further that the latter two were transferred to her by the bankrupt in fraud of creditors. For a time Mrs. Giffin also had a leasehold on a business property at Port Washington, Long Island, which she subleased to her husband; and in addition she was assignee of a judgment procured by the West Hempstead National Bank against him. The unpaid portion of the judgment and the unpaid rent and water charges on the Port Washington property were the basis of the claims expunged by the referee resulting in the first appeal. The summary judgment in the civil action was granted because the referee's findings in this first proceeding were given the effect of res judicata. Hence we first summarize these findings.

On August 10, 1942, before he became insolvent, the bankrupt purchased the Garden City home, taking title in his wife's name. He paid $6,500 in cash, for which he never received any consideration from his wife; the remainder of the $4,000 purchase price was covered by a mortgage. Thereafter he treated the property as his own. Thus he included it as a personal asset in a statement submitted to the Government to procure an extension of time on renegotiation payments in his business, and in a statement submitted to the West Hempstead National Bank in connection with a loan application, of which his wife had knowledge and in which she acquiesced. In his 1945 individual income tax return he claimed credit for mortgage interest and tax payments on the property. In discussions with his accountant he referred to the property as his own, although it was not carried on the books of the partnership business in which he was engaged.

In 1945, more than a year after he had become insolvent, the bankrupt arranged for a lease and option on the Port Washington property to be taken in his wife's name and furnished her the necessary funds. He then subleased the property from her at a figure substantially in excess of the rental under her lease.

In May, 1946, a new first mortgage was placed on the Garden City property; and in September, the leasehold and option on the Port Washington property were sold. The proceeds of these sales, together with $550 paid directly by the bankrupt, were used to satisfy a judgment obtained by the West Hempstead National Bank against the bankrupt and Mrs. Giffin; but instead of having the judgment cancelled, the bankrupt arranged to have it assigned to her.

In November, 1944, the bankrupt and Mrs. Giffin entered into a contract to purchase the Indiana farm, the bankrupt furnishing the funds for the deposit; and in January, 1945, the purchase was completed. Title, as usual, was taken in her name. The bankrupt paid the balance due at the closing, executed the mortgage note, and made payments for title search, insurance, and other charges. Subsequently he referred to the farm as his, in financial statements and in conversation; and he claimed deductions in his 1945 income tax return for mortgage interest and tax payments.

Further evidence of the bankrupt's course of conduct is found in his dealings with shares of stock in the Atlantic Pack-

aging Company, which he again purchased in his wife's name, while he was insolvent, and which he treated as his own property. Later he sold and appropriated the proceeds, with her knowledge and acquiescence, though this he falsely denied. He was continuously insolvent at least from October 31, 1943, and throughout the period when all these transactions, except the purchase of the Garden City property, were carried out. An involuntary petition was filed against him on August 6, 1946. On the evidence the findings were clearly not "clearly erroneous." They thoroughly substantiate the conclusion that the appellant was acting throughout as an "agent, dummy and instrumentality" of the bankrupt, and that her claims based on the Port Washington property rent, the water charge (for which there was no supporting proof), and the assigned judgment should be expunged and disallowed on the merits.

■ Appellant also raises a number of procedural objections to the course of the proceedings. First she objects because after Referee Fluckiger had filed an extensive opinion clearly setting forth his view of both the facts and the law his term of office expired and Referee Warner, to whom the matter was then referred, examined the record, signed formal findings of fact and conclusions of law, and entered the order affirmed by the district court. For all essential purposes the actual decision was made by the first referee, who saw and heard the witnesses; such additional findings as were made by the second referee were unimportant and not necessary to sustain the decision. The procedure seems quite in line with precedent and the terms of Federal Rules of Civil Procedure, rule 63, 28 U.S.C.A. Next she urges that she and her husband—though not her attorney—were excluded from the hearing during the examination of an accountant who had examined the bankrupt's books in preparation of his tax return. While we do not understand the reason or justification for this exclusion, we do not see how it could have affected the result. The important tax return was already in evidence. The further testimony explaining it and the bankrupt's conversations about it was not necessary to support the referee's finding. Then appellant renews a highly technical objection to the introduction of a carbon copy in place of an original financial statement—shown by later witnesses to have been duly executed—made by the bankrupt to the government in connection with the application for an extension of time on renegotiation payments. When this objection was first made and the referee pressed to find if counsel desired to force the offeror to the bother of getting the original from government records, counsel desisted. Hence he cannot now stand upon this technicality. Finally we find no basis for appellant's objection that this proceeding was improperly consolidated with the trustee's application for a turnover order for the property. Actually, as the referee says, these proceedings "were tried simultaneously" until, shortly before his decision herein, the referee ruled that he did not have summary jurisdiction to order recovery of the property and that a "plenary" action was necessary. Thus there was in reality no consolidation at all, much less an improper one.

■ Coming now to the "plenary" action, appellant's assignment of error is that the referee's findings in the earlier proceeding are not res judicata of the issues here because they were not essential to his conclusions in ordering the claims expunged. We agree with the view below that Schwartz v. Levine & Malin, Inc., 2 Cir., 111 F.2d 81, is direct authority and is not to be distinguished from the case at bar. There the trustee in a previous proceeding had moved to expunge the proofs of claim unless the creditor should repay certain alleged preferences. Here the trustee had couched his petition in slightly differing terms, but, if anything, it is even more inclusive. For he attempted to combine his objections to the claims with his demand for a direct order for the turnover of all these assets to him. In so doing he makes all the allegations he has since ever made as to the wife's purely nominal holding of the three items of property now the subject of this action. That he then asked for more, rather than the same or less, relief, as did the petitioner in the Schwartz case, can hardly make the issues he pre-

sented less clear cut. Nor was appellant in doubt as to his position; for her answer was to deny the portion of the petition dealing with her claims and to refuse to answer the allegations seeking the turnover order because the referee had no jurisdiction and she refused to subject herself to his jurisdiction. Our present question could arise only when later he did accept her viewpoint and declined to assert jurisdiction on the second issue;[1] practically, as his decision so thoroughly demonstrates, the issues are so inextricably interwoven as not to be separated, except on some meticulous wholly legal ground. But we do not see how the referee's denial of jurisdiction could properly remove this issue from the case. Sec. 57, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g, is quite explicit that "the claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances." Hence the findings not only as to the funds in the Hempstead Bank, but also as to the Garden City home and the Indiana farm, were necessarily within the legal issues framed and became res judicata as to the parties.

Both the order and the judgment appealed from are therefore affirmed.

[1] This decision follows a usually stated rule that while the bankruptcy court, in passing upon a creditor's claim, has summary jurisdiction to determine that the creditor has received a voidable preference rendering the claim disallowable under § 57, sub. g, infra, it may not go further and order the return of the property or payment of its value. Fitch v. Richardson, 1 Cir., 147 F. 197; Metz v. Knobel, 2 Cir., 21 F.2d 317, 318; Triangle Electric Co. v. Foutch, 8 Cir., 40 F.2d 353. But since the decision of Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192, some cases have suggested that affirmative relief may be given against the creditor. See Florance v. Kresge, 4 Cir., 93 F.2d 784; and compare Chase Nat. Bank of City of New York v. Lyford, 2 Cir., 147 F.2d 273, 277; National City Bank of New York v. O'Connell, 2 Cir., 155 F.2d 329, 332. In Moore and Tone, Proposed Bankruptcy Amendments: Improvement or Retrogression? 57 Yale L.J. 683, 711, 712, the learned authors say: "This rule, which makes two law suits grow where one would amply suffice, should be repudiated in either of two ways: give summary jurisdiction to enter an affirmative judgment; or allow the creditor to have the matter transformed into a plenary suit and transferred to the civil docket." See also 2 Collier on Bankruptcy 514–517, 14th Ed. 1940; 3 Collier on Bankruptcy 1030–1032, 14th Ed. 1941.