MESKILL, Circuit Judge:
 

 Defendant-appellee Lee Schoenfield (hereinafter “the bankrupt”) filed a voluntary petition in bankruptcy on April 25, 1975, and was adjudicated bankrupt on that date. One year later, plaintiff-appellant Steven H. Dickman, as Trustee in Bankruptcy of Lee Schoenfield, instituted two adversary proceedings in connection with the Schoenfield matter. One of these proceedings involved the trustee’s objection to the discharge of the bankrupt on the grounds,
 
 inter alia,
 
 that the bankrupt had given false testimony under oath, had fraudulently concealed assets belonging to the estate, and had destroyed or concealed or failed to keep records of his business transactions.
 
 See
 
 section 14-c of the Bankruptcy Act, 11 U.S.C. § 32(c) (repealed 1979);
 
 see also
 
 18 U.S.C. § 152. In the second proceeding, which was directed against both the bankrupt and his wife Louise and which has been referred to by the parties as the “plenary action,” the trustee sought a declaratory judgment with respect to certain properties involved in allegedly fraudulent transfers by the bankrupt to his wife. Although both cases were set down for trial before Bankruptcy Judge William J. Rudin on July 7,1976, because of numerous adjournments the trials were not commenced until 1978 — the discharge proceeding in February and the plenary action in May. Most important for purposes of this appeal is the fact that neither trial had been concluded when Bankruptcy Judge Rudin’s term of office expired in July of 1978.
 

 Upon the expiration of Bankruptcy Judge Rudin’s term, the Schoenfield matter was referred to Bankruptcy Judge Robert John Hall. The bankrupt immediately moved for a trial
 
 de novo
 
 in each of the two pending adversary actions. In a decision signed October 12, 1978, Bankruptcy Judge Hall stated:
 

 In the court’s opinion, it would be unconscionable to have to start the trial over again since more than three (3) years have gone by since the trials have commenced and the estate cannot bear the burden of new trials.
 

 The defendants have not shown any pressing need, in this case, why trials de novo should be granted.
 

 In an order dated November 2, 1978, Bankruptcy Judge Hall made clear his intention to pick up the trials where they had left off:
 
 [1]
 

 
 *932
 
 ORDERED, that the trial of the above proceedings be continued before me with the same effect as though I had presided at the trials thereof from the beginning and the trial of said proceedings shall continue where they were left off until each is concluded, and it is further
 

 ORDERED, that pursuant to the preceding paragraph, ,1 will consider the transcripts of the evidence thus far and the exhibits of the parties.
 

 The bankrupt appealed to the district court. In a decision and order dated December 12, 1978, District Judge George C. Pratt of the United States District Court for the Eastern District of New York reversed the orders of Bankruptcy Judge Hall and directed him to commence trials
 
 de novo.
 
 The district court order was in turn appealed to this Court by the trustee. On April 3, 1979, a panel of this Court dismissed the appeal insofar as it challenged the order of a trial
 
 de novo
 
 in the plenary action.
 
 [2]
 
 Consequently we review today only so much of Judge Pratt’s order as applies to the discharge proceeding. .
 

 I. APPELLATE JURISDICTION
 

 Before reaching the merits of the case, we must consider the bankrupt’s challenge to the appealability of the portion of the district court order that pertains to the discharge proceeding. Our appellate jurisdiction is based on § 24(a) of the Bankruptcy Act, 11 U.S.C. § 47(a) (repealed 1979), which provides:
 

 The United States courts of appeals . are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in
 

 matters of law and in matters of fact
 

 The bankrupt concedes that the hearing on the trustee’s objection to the discharge of the bankrupt was a “proceeding in bankruptcy,” and that “the general rule is that an appeal from an order or decree entered in a ‘proceeding in bankruptcy,’ either interlocutory or final, may be taken as of right, without any necessity for the securing of an allowance from the court of appeals.” 2 Collier on Bankruptcy ¶ 24.11[3] at 734 (14th ed.) (footnote omitted).
 
 See also Id.
 
 ¶ 24.24. The bankrupt contends, however, that the order appealed from falls within the “triviality exception,” which significantly modifies the general rule. To be appealable, an interlocutory order in a proceeding in bankruptcy “ ‘must have the character of a formal exercise of judicial power affecting the asserted rights of a party; that is, it must substantially determine some issue or decide some step in the course of the proceeding.’ ”
 
 Dubnoff v. Goldstein,
 
 385 F.2d 717, 722 (2d Cir. 1967),
 
 quoting
 
 2 Collier on Bankruptcy ¶ 24.39.
 
 See also In Re The Duplan Corporation,
 
 591 F.2d 139, 143-44 (2d Cir. 1978), and cases cited therein.
 

 We cannot characterize as trivial the order under consideration. By specifying the type of hearing that is to be afforded to the parties, this order, clearly a formal exercise of judicial power, decides a major step in the course of the discharge proceeding and affects both the asserted right of the trustee not to have to litigate his objection
 
 de novo
 
 and the asserted right of the bankrupt to have his case decided by a judge who has heard all the testimony. This appeál cannot be said to present a “mere administrative matter beyond our jurisdiction to review,”
 
 In re Ira Haupt & Co.,
 
 361 F.2d 164, 166 (2d Cir. 1966), and
 
 *933
 
 therefore the “triviality exception” is inapplicable. Consequently, there is no need to classify the disputed order as either final or interlocutory before turning to the substantive question raised by this appeal: that is, whether Judge Pratt erred in ordering a new trial in the discharge proceeding when the term of the presiding bankruptcy judge expired before the parties had finished presenting their evidence.
 

 II. TRIAL
 
 DE NOVO
 

 The paucity of federal eases involving the mid-trial substitution of judges indicates either that such substitution rarely occurs or that when it does, it does so with the consent of the parties. Either way, this seems like a healthy situation. Unfortunately, however, the rarity of this occurrence also means that there are few cases illuminating the question before us. Nor is the issue directly addressed by statute or rule — we have found no provision in either the Bankruptcy Act or the rules promulgated thereunder to be precisely on point.
 
 [3]
 

 As Judge Pratt noted, however, there is a federal rule that does authorize, under certain conditions, the substitution of a successor judge for one who is unable to proceed further with a trial that has already begun. Rule 63, Fed.R.Civ.P., provides:
 

 If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.
 

 However, whether Rule 63 does in fact have any bearing on the issue before us can be determined only after consideration of two subsidiary questions: (1) what is the relevance of Rule 63 to adversary proceedings in
 
 bankruptcy,
 
 and (2) what is the relevance of Rule 63 to bench trials in which the presiding judge becomes disabled
 
 before
 
 findings of fact and conclusions of law have been filed.
 

 Unlike many of the Federal Rules of Civil Procedure, Rule 63 has not been incorporated into the bankruptcy rules. Rule 81(a)(1), Fed.R.Civ.P., specifically declares that the rules of civil procedure do not apply to proceedings in bankruptcy “except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States.”
 
 [4]
 
 However, where, as here, specific questions are left unanswered by governing statutes, regulations and cases, we look to general principles of law for guidance.
 
 Cf. In re Yale Express System, Inc.,
 
 362 F.2d 111 (2d Cir. 1966) (applying general,principles of suretyship in bankruptcy case where Bankruptcy Act is silent). Thus, although Rule 63 is concededly not controlling in bankruptcy proceedings, it is both logical and useful to consult the rule and the cases interpreting it and to distill from these sources whatever princi-
 
 *934
 
 pies can contribute to the reasoned decision of this appeal.
 

 Since no findings of fact or conclusions of law were filed before Bankruptcy Judge Rudin’s term expired, Rule 63, even if fully applicable to bankruptcy proceedings, would not authorize the substitution that occurred. The Sixth Circuit has recently taken the position that the clear implication of Rule 63 is that a new trial is always required when prior to filing findings and conclusions a judge is disabled from proceeding further with a bench trial.
 
 Arrow-Hart, Inc. v. Philip Carey Co.,
 
 552 F.2d 711 (6th Cir. 1977). One authority, calling the principle “implicit in Rule 63,” states flatly that “in the absence of consent of all parties, Rule 63 does not authorize a judge in a court action to enter a judgment on the basis of the transcript of the trial before another judge who subsequently dies or becomes disabled.” 7 Moore’s Federal Practice ¶ 63.05 at 63-9 (footnote omitted). The parties have brought to our attention, and our own research has uncovered, only a few federal cases in which, over the objection of a party, a new trial was denied where a judge conducting a bench trial became disabled after hearing live testimony but before a decision was reached.
 
 See St. Louis Southwestern Railway Co. v. Henwood,
 
 157 F.2d 337 (8th Cir. 1946),
 
 cert. denied,
 
 330 U.S. 836, 67 S.Ct. 965, 91 L.Ed. 1282 (1947).
 
 See also Amoroso v. CIR,
 
 193 F.2d 583, 586 (1st Cir.), cert. denied, 343 U.S. 926, 72 S.Ct. 759, 96 L.Ed. 1337 (1952) (appellate court accepted decision of Tax Court judge who did not preside at trial, over objection of taxpayer; facts not disputed; “[i]t does not appear to us that the credibility of the [taxpayer — the sole witness to testify] was questioned or involved in the Tax Court’s determination of the case.”);
 
 D. M. W. Contracting Co. v. Stolz,
 
 81 U.S.App.D.C. 334, 158 F.2d 405 (D.C.Cir. 1946),
 
 cert. denied,
 
 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947) (district court, which had referred matter to auditor who died after taking testimony but before making report, adopted report of successor auditor over objections of party. Fed.R.Civ.P. 53). It is interesting to note that although the rule was in effect when these decisions were rendered, there is no reference to Rule 63 in the opinions.
 
 Cf. Thomas-Bonner Co.
 
 v.
 
 Hooven, Owens & Rentschler Co.,
 
 284 F. 386, 392 (6th Cir. 1922) (successor judge in contract action noted that no one having interest in case objected to the reassignment of the case);
 
 Bangor & Aroostook Railroad Co. v. Brotherhood of Locomotive Firemen & Enginemen,
 
 314 F.Supp. 352 (D.D.C.1970),
 
 aff’d,
 
 143 U.S.App.D.C. 90, 442 F.2d 812 (D.C.Cir. 1971) (motion presented to original judge solely on basis of affidavits, briefs, and argument was decided by successor judge; findings and conclusions of original judge were clear from his rulings during the hearing);
 
 In re Anjopa Paper & Board Manufacturing Co.,
 
 269 F.Supp. 241 (S.D.N.Y.1967) (stipulation provided that successor referee to make determinations on basis of record made before original referee);
 
 Petition of Garcia,
 
 65 F.Supp. 143 (W.D.Pa.1946) (no indication in opinion that either party objected to substitution of judges);
 
 O’Grady v. Chautauqua Builders’ Supply,
 
 33 F.2d 957 (W.D.N.Y.1929) (district court rendered decision on basis of testimony taken by referee, acting as special master, who died before rendering decision; no indication of objection by either party).
 

 Although this Court has never had occasion to rule on this precise issue, the Second Circuit cases concerning the substitution of judges appear to turn on the assumption that when during the course of a bench trial the original judge becomes unable to proceed, a new trial is required unless the original judge has previously filed findings of fact and conclusions of law. For example, in
 
 Giffen v. Vought,
 
 175 F.2d 186, 189 (2d Cir. 1949), the term of office of a referee in bankruptcy expired after he had filed “an extensive opinion clearly setting forth his view of both the facts and the law.” The successor referee to whom the matter was referred “examined the record, signed formal findings of fact and conclusions of law, and entered the order” which was ultimately appealed to this Court. The Court in effect held that where a detailed opinion
 
 *935
 
 has been filed, clearly setting forth the first judge’s determinations of fact and law, the absence of separately filed formal findings and conclusions does not render a new trial necessary.
 

 For all essential purposes the actual decision was made by the first referee, who saw and heard the witnesses; such additional findings as were made by the second referee were unimportant and not necessary to sustain the decision. The procedure seems quite in line with precedent and the terms of Federal Rules of Civil Procedure, rule 63
 

 Id.
 
 In our view, the Court’s reasoning can fairly be read to imply that had it been necessary for the second referee, who did not see and hear the witnesses, to make findings that were important to the decision of the case, a new trial would have been required.
 

 In
 
 Federal Deposit Insurance Corp.
 
 v.
 
 Siraco,
 
 174 F.2d 360 (2d Cir. 1949), decided the same year as
 
 Giffen
 
 v.
 
 Vought,
 
 the parties stipulated that the plaintiff should have judgment for a specified amount, subject to the right of both parties to present evidence with respect to the defendant’s counterclaim. When the original judge died before rendering a decision, the parties stipulated that the action be referred to another judge for determination upon the record made before the original judge. Significantly, this Court reversed the successor judge’s finding as to one item of the counterclaim
 
 despite
 
 the observation that the testimony of two witnesses, if believed, would have supported this finding. The Court explained that the successor judge “did not see the witnesses and consequently he was in no better position to pass upon their credibility than are we.”
 
 Id.
 
 at 363. A new trial, “before a judge who can decide after seeing the witnesses,” was ordered.
 
 Id.
 
 at 364. More recently, in
 
 Bromberg v. Moul,
 
 275 F.2d 574, 576 (2d Cir. 1960), the original judge died after hearing a bench trial but before making findings or reaching a decision. While we considered it “entirely appropriate” for the successor judge to treat the trial record as “supporting affidavits” in ruling on a motion for summary judgment under Fed.R.Civ.P. 56(a), we held that a new trial was required because issues of material fact remained to be resolveck Again there appears to be implicit in the decision the assumption that it would
 
 not
 
 have been appropriate for the second judge to resolve these material issues by finding the requisite facts on the basis of the record of a trial that he had not personally observed. Sounding a similar theme, in
 
 Lever v. United States,
 
 443 F.2d 350, 351 (2d Cir. 1971), a case in which the substitution of judges
 
 did
 
 meet the conditions of Rule 63, we upheld the decision of a successor judge to rule on post-judgment motions after the original judge had dismissed the complaint. The Court noted that the case was an “especially clear one for the salutary application of the general rule [Rule 63], since the trial judge made elaborate findings of fact and specifically noted his evaluation of the credibility of the witnesses, thus enabling another judge to examine the record with a discriminating eye.”
 

 We have described in some detail these Second Circuit decisions involving the substitution of judges in order to make clear that although the situation is rare, the legal principle guiding this Court’s approach to such cases is basic and familiar. That principle, simply stated, is that the factfinder who is given the opportunity to observe witnesses as they testify is in a better position to make factual findings based on that evidence than is the factfinder who is restricted to a written record of the same testimony. Even before the study of “body language” came into vogue, it was recognized that transcripts of testimonial evidence — which cannot capture the sweaty brow, the shifty eye, the quavering voice— never fully reflect what was communicated by the testifying witness.
 
 See, e. g., Harned v. Henderson,
 
 588 F.2d 12, 23-24 (2d Cir. 1978);
 
 Dyer v. MacDougall,
 
 201 F.2d 265, 268-69 (2d Cir. 1952). The rules governing the conduct of civil trials in general and bankruptcy proceedings in particular reflect this preference for live testimony. Rule 43(a), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Bankruptcy Rule 917, provides in part:
 

 
 *936
 
 In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court.
 

 This practice “has the obvious advantage of permitting judge or jury to observe the appearance and demeanor of witnesses so as to determine more readily their veracity (or lack thereof) and the weight to be given their testimony.” 5 Moore’s Federal Practice ¶ 43.03 at 43-12;
 
 accord
 
 13 Collier on Bankruptcy ¶ 917.06[1].
 

 Returning to the case before us, one of the major questions to be resolved in the discharge proceeding that has been reassigned to Bankruptcy Judge Hall is whether the bankrupt
 
 knowingly
 
 and
 
 fraudulently
 
 made a false oath in connection with the bankruptcy. 1A Collier on Bankruptcy ¶ 14.25 and ¶ 14.26. As is often the case in discharge proceedings, the bankrupt himself is the primary or sole witness that each side expects to call. We have emphasized, in similar situations, both the importance of credibility assessments to a proper evaluation of the objections to discharge
 
 and
 
 the importance of an opportunity to observe the witnesses to the proper assessment of credibility.
 
 See, e. g., In re Robinson,
 
 506 F.2d 1184, 1187 (2d Cir. 1974) (“Great weight is given to the referee’s findings because he saw and heard the witnesses and his findings are not to be reversed unless they are clearly erroneous.”);
 
 In re Ostrer,
 
 393 F.2d 646, 648-49 n. 1 (2d Cir. 1968) (“On an issue like intent to deceive, where the bankrupt’s credibility, is an important factor, the referee’s findings should be accorded great weight since he had an opportunity to hear and observe the bankrupt.”);
 
 In re Melnick,
 
 360 F.2d 918, 920 (2d Cir. 1966) (“we have repeatedly stressed the weight that must be accorded in such matters to the findings of the trier of the facts ‘who saw and heard the witness’ ”) (citations omitted);
 
 In re Simon,
 
 197 F.Supp. 301, 303 (E.D.N.Y.1961),
 
 aff’d,
 
 299 F.2d 853 (2d Cir. 1962) (clearly erroneous rule particularly appropriate when motive and intent of bankrupt are material); cf.
 
 In re Mimshell Fabrics, Ltd.,
 
 491 F.2d 21, 23 (2d Cir. 1974). As these cases indicate, so great is the deference owed to the factfinder who has personally observed the giving of testimony, that particularly when the credibility of witnesses is at issue a reviewing court will overturn only those findings that can be characterized as “clearly erroneous.”
 
 See
 
 Bankruptcy Rule 810, which provides that on appeal the district court “shall accept the referee’s findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.”
 
 See also
 
 13 Collier on Bankruptcy ¶ 810.05 at 8 — 79: “The rule is based on sound common sense. Where testimony conflicts, where credibility of witnesses is involved, the referee who saw and heard the witnesses, who observed their demeanor and the intonations in their voices, is better able to make findings of fact than the district judge reviewing a cold record.”
 

 It is difficult to disagree with Judge Pratt’s determination that there is a need to determine the credibility of the bankrupt
 
 [5]
 
 and that “the previous testimony before Judge Rudin is as important to the issue of credibility as is any testimony that may be forthcoming when the trials resume
 
 *937
 
 before Judge Hall.” For the following reasons we also cannot reject Judge Pratt’s determination that despite the burden such a decision will place on the court and on the parties, a new trial is appropriate.
 

 After the trustee presented his evidence in the discharge proceeding, the bankrupt made a motion to dismiss the complaint for failure of the trustee to make a prima facie case. Under § 14-c of the Bankruptcy Act, 11 U.S.C. § 32(c) (repealed 1979), the trustee has the burden of proving facts essential to his objection.
 
 See also
 
 Bankruptcy Rule 407. Bankruptcy Judge Rudin, in ruling that the trustee had made a prima facie case as to all specifications, in effect shifted the burden to the bankrupt to prove that he did not commit the specified acts.
 
 Id.; In re Robinson, supra,
 
 506 F.2d at 1187. There is no reason to believe that the trustee will not be able to establish again his prima facie case in a new trial, and thus unless the bankrupt carries his burden he will be denied a discharge. The bankrupt apparently believes that his chances of rebutting the trustee’s evidence are greater if Bankruptcy Judge Hall reaches a decision after observing a full hearing in which each side presents its whole case. In our view the bankrupt should not be deprived of the opportunity to defend himself in a full trial because of an event not within his control— the expiration of Judge Rudin’s term.
 

 Following Judge Pratt’s example, we decline to make any determination or suggestion as to how the new trial is to be conducted — Bankruptcy Judge Hall is in the best position to decide how best to afford the bankrupt a full hearing while minimizing the needless expenditure of time and money, and he has broad discretion to shape the trial to achieve these ends. Of course, the trustee is also free to tailor the presentation of his evidence so as to maximize its impact while minimizing duplication and waste. Having previously conducted a full direct examination of the bankrupt, he may find it possible to cover the relevant ground more quickly.
 
 [6]
 
 Nor will the fruits of his earlier labors be lost to him, since it appears that much or all of the bankrupt’s testimony at the first hearing may be offered in the new trial as admissions.
 
 [7]
 

 Assuming without deciding that in some cases potential hardship to one party would justify the mid-hearing substitution of bankruptcy judges without the consent of all parties, this is not such a case.
 
 [8]
 
 Although we recognize that the repetition of even a portion of the first hearing on the trustee’s objection to discharge will place a burden on the estate, on the facts of this case we hold that Judge Pratt did not err in concluding that these economic considera
 
 *938
 
 tions should yield to the right of the bankrupt not to be deprived of a discharge without the type of hearing generally regarded as the optimal way of deciding adversary proceedings in bankruptcy as well as other types of civil disputes.
 

 Affirmed.
 

 [1]
 

 . The November 2 order corrected, modified, and superseded an earlier order, dated October 23, which contained an inadvertent factual inaccuracy not relevant to this appeal.
 

 [2]
 

 . The bankrupt had moved for dismissal of the appeal insofar as it concerned the plenary action on the ground that the order of a trial
 
 de novo
 
 in that proceeding was an interlocutory order entered in a controversy arising in a proceeding in bankruptcy and was therefore not appealable. 11 U.S.C. § 47(a) (repealed 1979). The dismissal order was signed by William H. Mulligan and Ellsworth A. Van Graafei-land, Circuit Judges; and Lloyd F. MacMahon, District Judge of the United States District Court for the Southern District of New York, sitting by designation.
 

 [3]
 

 . This appeal is governed by the law as it stood prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978. See Pub.L. 95-598, §§ 402 and 403.
 

 [4]
 

 . We have found no discussion of the question, but it appears most likely that Fed.R.Civ.P. 63 was not incorporated in the bankruptcy rules simply because under Bankruptcy Rule 102(b) the district courts have rather broad authority to reassign bankruptcy cases from one bankruptcy judge to another, or from a bankruptcy judge to the district judge. Rule 102(b) provides:
 

 Withdrawal of Reference and Assignment.
 
 The district judge may, at any time, for the convenience of parties or other cause, withdraw a case in whole or in part from a referee and either act himself or assign the case or part thereof to another referee in the district.
 

 The preliminary draft of the proposed bankruptcy rules, published by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States in March of 1971, contains a
 
 "cf."
 
 reference in the index from Fed.R.Civ.P. 63 to Bankruptcy Rule 102(b),
 
 see
 
 page 393, but contains no discussion of the decision not to incorporate Fed.R. Civ.P. 63 into the bankruptcy rules.
 
 See
 
 Advisory Committee’s Note to Rule 102(b) at 4 — 5.
 

 [5]
 

 . It should be noted that in denying the trustee’s motion for summary judgment in the discharge proceeding, pursuant to Fed.R.Civ.P. 56 and Bankruptcy Rule 756, Bankruptcy Judge Rudin had earlier stressed the importance in this action of an opportunity for the factfinder to take live testimony:
 

 It is noted that the gravamen!] of a false oath is “intent to deceive and defraud”. Many factors must be considered to ascertain “intent to defraud.” . [I]t may be found that the [allegedly false] answers were not made with intent to conceal. These are determinations which can only be made after hearing and seeing the bankrupt and witnesses.
 

 Order dated June 16, 1977.
 
 See also
 
 Judge Rudin’s order dated October 28, 1976, denying the bankrupt’s motion to dismiss the trustee’s complaint in the discharge action, on the ground that the complaint raised “questions of fact which can only be brought into focus after a hearing at which the bankrupt could explain his answers and the truth of them.”
 

 [6]
 

 . Before the discharge proceeding was transferred to Bankruptcy Judge Hail, seven hearings had been conducted by Bankruptcy Judge Ru-din. The only witness called by the trustee was the bankrupt himself. The bankrupt, who took the stand in his own defense, was being questioned by his attorney on direct examination and had not yet been cross-examined by the trustee when the proceedings were halted. The first discharge proceeding generated approximately 450 pages of transcript. Of this total, the direct examination of the bankrupt by the trustee takes up about 350 pages, and the examination of the bankrupt by his own lawyer fills about 100 pages.
 

 [7]
 

 . During argument of this appeal on June 7,-1979, counsel for the bankrupt conceded as much in the following exchange with Judge Oakes:
 

 Judge Oakes: Why isn’t this simply “much ado about nothing,” because even if you are right that there has to be a new trial, a trial
 
 de novo,
 
 why isn’t all of the previous testimony of your bankrupt admissible as admissions? Why can’t the trustee simply .
 

 Counsel for Bankrupt: He can, Your Hon- or.
 

 Judge Oakes: ... at the trial offer that evidence. .
 

 Counsel for Bankrupt: He can, Your Hon- or, who said he could not?
 

 See
 
 Fed.R.Evid. 801(d)(2), defining admission by party-opponent as non-hearsay, made applicable in bankruptcy proceedings by Bankruptcy Rule 917.
 
 See generally
 
 McCormick on Evidence § 262.
 

 [8]
 

 . Compare Utica Mutual Insurance Company v. Vincent,
 
 375 F.2d 129 (2d Cir.),
 
 cert. denied,
 
 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967) (holding, in administrative law context, that due process does not require that decider of fact see witnesses while acknowledging that this is “usually a sensible rule of judicial administration” ).