CEDE & CO. and Cinerama, Inc., Petitioners Below, Appellants,

v.

TECHNICOLOR, INC., Respondent Below, Appellee.

No. 106, 1999.

Supreme Court of Delaware.

Submitted: March 28, 2000.
Decided: July 7, 2000.
Rehearing Denied July 26, 2000.

Robert K. Payson, Arthur L. Dent, Potter, Anderson & Corroon LLP, Wilmington, Delaware, Gary J. Greenberg (argued), New York City, for appellants.

Thomas J. Allingham, II, (argued), Leonard P. Stark, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware, for appellee.

Before WALSH, HOLLAND, and HARTNETT [1], Justices.

1. Retired Justice sitting by designation pursuant to Delaware Constitution art. IV, § 38.

HOLLAND, Justice:

This is an interlocutory appeal in a sempiternal appraisal action. The petitioners-appellants (collectively "Cinerama") seek a determination of the fair value of 201,200 shares of the common stock of respondent-appellee ("Technicolor") as of January 24, 1983.[2] On October 21, 1996, this Court reversed the Court of Chancery's October 19, 1990 opinion and October 27, 1995 judgment fixing the fair value of Technicolor stock at $21.60 per share.[3] This Court held that the Court of Chancery committed legal error when it failed to value Technicolor on the merger date as it was then "operating pursuant to the Perelman Plan," but instead valued the company "on the date of the merger 'but for' the Perelman Plan; or, in other words, by valuing Technicolor as it was operating on October 29, 1982, pursuant to the Kamerman Plan."[4]

The appraisal action was "remanded to the Court of Chancery for a recalculation of Technicolor's fair value on the date of the merger."[5] When this matter was remanded to the Court of Chancery, the original trial judge recused himself *sua sponte* from further participation. This appraisal action was reassigned to another member of the Court of Chancery ("successor judge").

The successor judge issued an opinion that decided several significant procedural issues. The successor judge set forth his understanding of this Court's mandate and then: decided to appoint a non-lawyer to serve concurrently as an independent expert witness on valuation matters and as a special appraisal master; deferred ruling on several issues presented by Cinerama pursuant to Court of Chancery Rule 63; deferred consideration of the admissibility under Delaware Rules of Evidence 702 and 703 ("D.R.E.") of Technicolor's expert opinion evidence from Bruce Klopfenstein, which Cinerama had moved to exclude; and ruled that certain post-merger evidence was inadmissible to establish merger date value.

Cinerama filed a motion in the Court of Chancery for Certification of Interlocutory Appeal. Technicolor did not oppose that application. The Court of Chancery issued an order granting Cinerama's request for certification. This Court accepted the interlocutory appeal.

In this appeal, Cinerama contends: (1) the successor judge should be instructed by this Court that he cannot rely upon the 1990 appraisal opinion of the original trial judge for *any* purpose except law of the case matters and must perform his own independent valuation of Technicolor under the Perelman Plan; (2) the successor judge's appointment of a combination special appraisal master/independent expert witness and the delegation of responsibility for valuing the Technicolor shares is unlawful because it is contrary to the statutory mandate that "the Court [of Chancery] shall appraise the shares";[6] (3) that upon the reassignment of the case to the successor judge, the proceedings on remand came within the purview of Rule 63,[7] which provides, in part, that a "successor [judge] shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden"; (4) that the successor judge is obligated to rule at this stage of the proceedings on Cinerama's motion to exclude the opinion of Technicolor's expert witness, Bruce Klopfenstein, and that Klopfenstein's opinion should be stricken from the record unless it is found to satisfy the standards for admissibility

2. *See* 8 *Del.C.* § 262.

3. *See Cede & Co. v. Technicolor, Inc.*, Del. Supr., 684 A.2d 289 (1996) (*"Technicolor IV"*).

4. *Id.* at 299.

5. *Id.*

6. 8 *Del.C.* § 262(h).

7. Ct.Ch.R. 63.

under D.R.E. 702 and 703; and (5) post-merger evidence concerning the realization of pre-merger plans is legally admissible in an appraisal to prove value as of the date of the merger, e.g., the sums realized as a result of Technicolor's actual 1983 asset sales.

### Unforeseen Developments

When this appraisal proceeding was remanded to the Court of Chancery, this Court contemplated that the matter would be decided by the original trial judge. The former Chancellor, however, unexpectedly recused himself *sua sponte.* Perhaps, that was because he had already decided to conclude his judicial career when his term of office ended.[8]

The prospect of having a new hearing in the longest trial in the two hundred year history of the Court of Chancery[9] was a daunting prospect for the successor judge and cause for plangent expressions from the parties. The rulings that are at issue in this interlocutory appeal reflect the good faith effort of the successor judge to accomplish what we have concluded is unattainable: avoid a new trial; delegate the authority for making some preliminary determination to a court-appointed hybrid special appraisal master/independent expert witness; and defer making several key evidentiary rulings.

Although we have concluded that the interlocutory judgments of the successor judge must be reversed, it is important to state that our reasons relate to several developments that could not have been reasonably foreseen. First, given the un-anticipated fact that the original trial judge is unavailable, this Court must clarify its mandate. Second, during the pendency of the present interlocutory appeal, this Court has written a definitive decision about the proper role for masters in the Court of Chancery.[10] Third, during the pendency of the present interlocutory appeal, this Court has adopted a new Delaware Rule of Evidence that provides for court-appointed expert witnesses.[11] Fourth, subsequent to the original trial in this appraisal proceeding, this Court has approved the *Daubert* standard for determining the admissibility of all expert testimony on scientific, technical or other specialized matters within the scope of Delaware Rule of Evidence 702.[12]

### Original Mandate

In *Technicolor IV,* this Court held that the original trial judge committed reversible error by applying a legally erroneous majority acquiror principle. As a result of that error, the original trial judge failed to value Technicolor on the merger date as it was then "operating pursuant to the Perelman Plan," but instead valued the company "on the date of the merger 'but for' the Perelman Plan; or, in other words, by valuing Technicolor as it was operating on October 29, 1982, pursuant to the Kamerman Plan."[13] We also noted that "[t]he fundamental nature of the disagreement between the parties about the Perelman Plan and the Kamerman Plan ... resulted in different factual assumptions by their respective experts."[14]

---

8. The Seattle University Law Review published a collection of articles about the former Chancellor's illustrious judicial tenure. *See* Eric A. Chiappinelli, *A Tribute to Chancellor William T. Allen,* 21 Seattle U.L.Rev. 549 (1998).

9. *See generally Cinerama, Inc. v. Technicolor, Inc.,* Del.Supr., 663 A.2d 1156, 1180 n. 34 (1995) *("Technicolor III ").*

10. *See DiGiacobbe v. Sestak,* Del.Supr., 743 A.2d 180 (1999).

11. *See* D.R.E. 706.

12. *See M.G. Bancorporation, Inc. v. LeBeau,* Del.Supr., 737 A.2d 513, 521 (1999).

13. *Technicolor IV,* Del.Supr., 684 A.2d 289, 299 (1996).

14. *Id.* at 294.

This Court then determined that the original trial judge had arrived at an "understatement of Technicolor's fair value" in the 1990 opinion because he had "valued Technicolor pursuant to a discounted cash flow model with the negative factual input and assumptions from the Kamerman Plan rather than the Perelman Plan."[15] That model was Technicolor's Alcar model which the original trial judge adopted as his valuation model. Accordingly, we held that the original trial judge's "attribution of only a $4.43 per share value difference between the Perelman Plan and the Kamerman Plan" was not to be regarded as the law of the case.[16]

In *Technicolor IV*, we stated that upon remand, "it is within the Court of Chancery's discretion to select one of the parties' valuation *models* as its *general framework*, or [to] fashion its own."[17] With respect to the discounted cash flow inputs to be used on remand as the components in any model, however, we noted that the original trial judge's legally erroneous majority acquiror principle had "permeated [his] factual assumptions so pervasively" that:

> We are unable to determine from the record how much of the "input" accepted by the Court of Chancery was predicated upon its erroneous legal theory and how much was properly attributable to its assessment of credibility or a weighing of the evidence.[18]

That observation was the predicate for our conclusion that on remand Cinerama must be allowed to renew all of its formulaic and factual arguments before the recalculation of fair value is made.[19] Accordingly, this Court's remand to the Court of Chancery in *Technicolor IV* mandated a new appraisal of Technicolor under the Perelman Plan based upon factual findings that were *completely* independent of the original trial judge's legally erroneous majority acquiror principle.

The single most important issue presented to the successor judge at the outset of the proceedings on remand was to decide whether the new appraisal valuation mandated by this Court could be accomplished without having an entirely new trial. The successor judge's opinion acknowledges that: "the Supreme Court explicitly instructed me to reappraise Technicolor assuming the Perelman's plan utilization of assets and to give Cinerama the opportunity to not only challenge the [original judge's] findings of fact and law where tainted by his 'erroneous legal theory' but to reargue every underlying fact and legal issue upon which he ruled." The successor judge contemplates comporting with our mandate on remand by a process that begins with the original trial judge's 1990 valuation opinion and then focuses on ascertaining which factual findings may be reused in his own new appraisal of Technicolor because they are unrelated to his predecessor's legally erroneous majority acquiror principle.

When this same successor judge engaged in a similar process under analogous remand circumstances, following the issuance of this Court's mandate in *Gonsalves I*,[20] his resultant valuation determination was reversed by this Court in *Gonsalves II*.[21] The successor judge did not want these remanded proceedings to begin on either an erroneous legal or factual premise. Consequently, he invited both Technicolor and Cinerama to seek the present interlocutory review by this Court regard-

**15.** *Id.* at 299.

**16.** *Id.* at 299–300.

**17.** *Id.* at 299 (emphasis supplied).

**18.** *Id.* at 299, 301.

**19.** *See id.* at 301.

**20.** *Gonsalves v. Straight Arrow Publishers, Inc.*, Del.Supr., 701 A.2d 357, 362 (1997) (*"Gonsalves I"*).

**21.** *Gonsalves v. Straight Arrow Publishers, Inc.*, Del.Supr., No. 232, 1998, 1999 WL 87280, Walsh, J. (Jan. 5, 1999) (ORDER) (*"Gonsalves II"*).

ing his proposed course of action in response to our mandate in *Technicolor IV*.

### Successor Judge and Rule 63

■ After stating his preference, "to the extent possible not to reopen this matter," the successor judge looked to Court of Chancery Rule 63 for guidance. That rule provides:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. The successor shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.[22]

The interpretation of Court of Chancery Rule 63 is a matter of first impression in Delaware. Court of Chancery Rule 63 is, however, almost identical to Rule 63 of the Federal Rules of Civil Procedure.[23] Generally, this Court gives the authorities applying the Federal Rules "great persuasive weight" in the construction of a parallel Delaware Rule.[24]

■ The phrase "unable to proceed" in Federal Rule 63 has been construed broadly. Federal Rule 63 applies "whether the inability to proceed is the result of death, disability, sickness or disqualification." [25]

Federal Rule 63 applies also where a judge retires,[26] her term expires,[27] he resigns his office,[28] or an appellate court remands a case for further proceedings before a new judge.[29] Based upon the persuasive rationale of those federal precedents, we hold that Court of Chancery Rule 63 applies to any proceedings on remand that are being conducted by a successor trial judge rather than the original jurist who presided.

The first sentence in Court of Chancery Rule 63, like its federal counterpart, requires two conditions to be met before the operative procedures in the second and third sentences can be invoked. First, the successor trial judge must certify his or her familiarity with the record. In this case, the successor judge's interlocutory written opinion states that he "tried to assimilate as much of the record as is humanly possible given the rather full schedule of a trial judge." Second, the successor judge must make a determination that the proceedings can be completed without prejudice to the parties.

■ In this case, the successor trial judge erred by assuming, rather than determining, that the parties would not be prejudiced by proceeding without a new trial. The term "without prejudice" in Federal Rule 63 relates primarily to whether a final decision can be reached on the basis of the existing record without recalling witnesses.[30] Consequently, that focus is premised on the concern that

---

22. Ct.Ch.R. 63.

23. The only textual difference between the Chancery and Federal Rules is in the second sentence, which in the Federal Rule begins: "In a hearing or trial without a jury...."

24. *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n. 11 (1988) (*"Technicolor I "*). *See also Leon N. Weiner & Assocs. v. Krapf*, Del.Supr., 584 A.2d 1220, 1223–24 (1991); *Hoffman v. Cohen*, DelSupr., 538 A.2d 1096, 1097–98 (1988).

25. 12 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 63.02[1] (3d ed.2000).

26. *Canseco v. United States*, 97 F.3d 1224 (9th Cir.1996).

27. *In re Schoenfield*, 608 F.2d 930 (2d Cir. 1979).

28. *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 438 n. 20 (5th Cir. 1977).

29. *Home Placement Service, Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1201–04 (1st Cir. 1987).

30. *See* 12 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 63.04[3] (3d ed.2000).

"transcripts of testimonial evidence ... never fully reflect what was communicated by the testifying witness." [31] The federal courts have adopted a "credibility test" for making the Rule 63 prejudice determination.

■ In this case, the successor trial judge should have made an actual *determination* that the proceedings could be completed without prejudice to the parties, by applying the "credibility test" that has been adopted by the federal courts. Nevertheless, even if the successor trial judge had actually determined that an *entirely* new trial was unnecessary, because this case could be completed without prejudice to the parties, that determination would not have precluded the parties' right to recall some prior witnesses. Rather, the focus of the inquiry would have moved to the second sentence of Court of Chancery Rule 63 which provides that "at the request of a party, the trial judge shall recall any witness whose testimony is material and disputed and who is available to testify again without undue burden."

The *Advisory Committee Note* to Federal Rule 63 [32] states that a successor judge should decide a case based on an existing record without rehearing *any* witnesses only "in limited circumstances," to wit, if (i) credibility is not at issue; (ii) material witnesses have become "unavailable"; or (iii) the successor judge determines "particular testimony is not material or is not disputed, and so need not be reheard." [33] In this case, the successor judge acknowledged the parties *right* to recall any "wit-ness whose testimony is material and disputed." Nevertheless, he did not rely upon Cinerama's motions. Instead, the successor judge erroneously directed the court-appointed expert "to assess the materiality of Cinerama's witnesses and evidence and render a preliminary report to which the parties will respond."

■ In this statutory appraisal proceeding, the materiality of witness testimony was an integral function of the three types of factual findings that required a judicial determination. First, there was a need for findings of basic facts. Second, one or more of those basic factual findings had to be either selected alone or combined with other basic facts to quantify the inputs that would constitute the intermediate factual mathematical components of any valuation model. Finally, a proper judicial application of those mathematical components, within the context of a legally acceptable valuation model, would lead to the ultimate judicial factual finding: Technicolor's valuation on the merger date.

■ In any appeal, the factual findings of a trial judge will not be set aside by a reviewing court unless those factual determinations are clearly erroneous. The factual findings of a trial judge can be based upon physical evidence, documentary evidence, testimonial evidence, or inferences from those sources jointly or severally. When factual findings are based on determinations regarding the credibility of witnesses, however, the deference already required by the clearly erroneous standard of appellate review is enhanced. [34]

**31.** *In re Schoenfield*, 608 F.2d at 935. *Moore's*, ¶ 63.05[4][a] (3d ed.2000); *Advisory Committee Note* (discussing "credibility" policy). *See Chicago Professional Sports L.P. v. N.B.A.*, 95 F.3d 593, 601 (7th Cir.1996) (absent stipulation of parties that credibility of witnesses is not at issue, retrial necessary on remand due to death of original trial judge); *Emerson Elec. Co. v. General Elec. Co.*, 846 F.2d 1324, 1326 (11th Cir.1988) (when credibility is at issue, successor judge must hear witnesses on retrial); *Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*, 772 F.2d 78, 85–87 (4th Cir.1985).

**32.** Advisory Committee Note of 1991 to Fed. R.Civ.P. 63, *quoted in* Historical Appendix, 12 *Moore's Federal Practice* § 63 App. 03(2) (3d ed.2000).

**33.** *Id. See also 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2921 at 537; *Moore's*, ¶ 63.05[4][b].

**34.** *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

∎ Only the trial judge can be aware of the variations in demeanor or voice inflections that are frequently dispositive influences upon the listener's understanding of and belief in what is said.[35] This does not mean that the trial judge may insulate his or her factual findings from appellate review by denominating them as credibility determinations.[36] "But when a trial judge's finding is based on his or her decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."[37]

In *Technicolor IV*, this Court was unable to separate the original trial judge's factual findings from his legally erroneous majority acquiror principle. We were confident, however, that the original trial judge could have accomplished that task upon remand. We were equally confident the original trial judge could identify on the record those factual determinations that were properly attributable to his assessment of witness credibility on the basis of their trial testimony. When the original trial judge recused himself *sua sponte*, however, the successor judge was confronted with the same "cold" paper record that we had reviewed in *Technicolor IV*.

This Court's holding in *Technicolor IV* was intended to constitute our determination that the basic, intermediate and ultimate factual determinations that were made by the original trial judge were inextricably intertwined with *both* his legally erroneous majority acquiror principle and his assessment of witness credibility. We have regretfully concluded that the only way to avoid prejudice to the parties in this unusual appraisal proceeding, on remand before a successor judge, is by having a new trial.[38] Accordingly, we now hold that the successor judge must conduct an entirely new trial in this statutory appraisal proceeding.

### New Trial

The successor judge has a well-deserved excellent reputation for managing complex trials in an efficient and expeditious manner without compromising any party's right to a full and fair proceeding. The new trial in this appraisal proceeding should be much shorter than the original trial and, perhaps, even shorter than other statutory appraisal trials for several reasons. First, when this statutory appraisal was heard originally, it was combined with a separate liability proceeding that is no longer a consideration.[39] Second, this Court's opinion in *Technicolor IV* has narrowed the focus of the parties and their experts to the Perelman Plan that was operative on the merger date.[40] Third, the present opinion has resolved several more issues. Fourth, there are undoubtedly many undisputed evidentiary facts that the parties can identify and resolve by stipulation. Finally, we encourage the successor judge to impose reasonable limitations upon the time that each party will have to

---

**35.** *Id.*

**36.** *Id.* ". . . factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." *Id.*

**37.** *Id.*

**38.** *Home Placement Service, Inc. v. Providence Journal Co.,* 819 F.2d at 1202. *Accord Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.,* 772 F.2d at 85 (unless the successor judge rehears witnesses whose credibility is in issue, the "right to a full due process hearing would be severely undercut.")

**39.** *Cinerama, Inc. v. Technicolor, Inc.,* Del. Supr., 663 A.2d 1156 (1995).

**40.** *Technicolor IV,* Del.Supr., 684 A.2d 289 (1996).

present its case, e.g., a fixed number of trial days for each side.

### Appraisal Masters Eliminated

 The next question presented in this interlocutory appeal is whether there is any role for a special appraisal master when this statutory appraisal proceeding is remanded to the Court of Chancery for a completely new trial. In *DiGiacobbe*, this Court has recently examined the historically broad use of masters in the Court of Chancery generally.[41] In the specific context of a statutory appraisal proceeding, we now conclude that the Court of Chancery's authority to appoint a special appraiser has been eliminated.

In *DiGiacobbe*, this Court acknowledged that the broad inherent and statutory power of the Court of Chancery to appoint masters can be proscribed by "statute or rule of court."[42] Cinerama argues that the 1976 amendment of the appraisal statute constitutes such an enactment. According to Cinerama, that 1976 legislation "eliminated both the power of the Court of Chancery to appoint special masters to act as appraisers and the authority of the Court to delegate any portion of its appraisal adjudicatory function to them." We agree.

Prior to, its amendment in 1976, the Delaware appraisal statute mandated a two-step process.[43] The petition was initially considered by an appraiser appointed by the Court of Chancery.[44] The appraiser's valuation report was thereafter subject to exceptions to be heard by the Court of Chancery.[45] That two-step process had been in effect for 33 years. The official Commentary explaining the proposed 1976 amendments to the members of the General Assembly stated:

At present, the statute requires the court to appoint an appraiser who is charged with the obligation of determining the fair or intrinsic value of the stock which is being appraised. Then, if either party disagrees with the appraiser's findings, the party has the right to have his exceptions heard in the Court of Chancery. Experience has shown this two-step procedure to be wasteful of time and money. Thus, proposed modifications to § 262(e) through § 262(g) provide for the streamlining of the appraisal process by the elimination of the appraiser. The action will now be heard by the Court of Chancery in the first instance. Also, the process is further streamlined by permitting the determination of the value of the stock to go forward while the court is still determining which stockholders have complied with the statute and are entitled to an appraisal. In the past, the court has been required to determine, sometimes through a lengthy process, those stockholders entitled to an appraisal before the actual appraisal process can begin. Again, experience has shown this to be a time-consuming and wasteful process.[46]

According to the Commentary, the stated legislative purpose for the 1976 amendments to the appraisal statute was to "streamlin[e] . . . the appraisal process by the *elimination* of the appraiser."[47] The Commentary also explained that, as a consequence of the proposed amendments, future appraisal actions would "be heard by the Court of Chancery in the *first* instance."[48] This legislative intent was to be accomplished by amending the statuto-

---

41. *DiGiacobbe v. Sestak*, Del.Supr., 743 A.2d 180, 182 (1999).

42. *Id.*

43. *Gonsalves I*, Del.Supr., 701 A.2d 357, 360 (1997).

44. *Id.*

45. *Id.*

46. Commentary to House Bill No. 916, 128th General Assembly, Second Session 1976 ("Commentary").

47. *Id.*

48. *Id.* (emphasis supplied).

ry text to require that "the Court shall appraise the shares." [49]

Based on the foregoing legislative history and statutory text, Cinerama argues that the 1976 legislation "eliminated" the role of the special appraiser and mandated an adjudication by the Court of Chancery in a one-step process. First, Cinerama submits that the unambiguous text of Section 262(h) mandates an appraisal by the "Court," i.e., the Chancellor and Vice–Chancellor only. Alternatively, Cinerama argues that, if the statutory text is ambiguous, the Commentary makes that legislative intent explicit.

∎ The guiding principle when construing any statute is the search for legislative intent.[50] When a statute is unambiguous, and there is no reasonable doubt as to its meaning, this Court is bound by the statutory text. Consequently, "where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls." [51]

∎ A statute is ambiguous only if it "is reasonably susceptible of different conclusions or interpretations." [52] The word "Court" in the current appraisal statute appears to be an unambiguous synonym for "judge," i.e., Chancellor or Vice–Chancellor. Technicolor suggests that the word "Court" becomes ambiguous when Section 262 is read in pari materia with 10 Del.C. § 372. The latter statute provides that

the "Court of Chancery may, in any cause pending ... [therein], appoint a Master in Chancery, pro hac vice in such particular cause." [53] Cinerama argues that Section 262 is a specific self-contained statutory scheme that governs all aspects of appraisal proceedings. Accordingly, Cinerama contends that since Section 262 does not explicitly authorize the appointment of a master, the general provisions in Section 372 cannot confer such authority.

∎ As a general rule of statutory construction, when a specific statute is enacted that appears to conflict with an existing general statute, the subsequently enacted specific statute is controlling. Section 372 dates back to 1903.[54] The history of the appraisal statute supports Cinerama's position that the General Assembly did not intend for Section 372 to be applicable in appraisal cases.[55]

The appraisal statute underwent a major revision in 1943.[56] The Court of Chancery was assigned the role of appointing a single appraiser to determine the value of the dissenting shares. Although Section 372 had been extant for forty years, the 1943 amendments to the appraisal statute did not invoke its provisions but instead specifically provided for the appraiser to be vested with the same "powers and authority as may be conferred upon Masters by the Rules of the Court of Chancery or by the order of his appointment." [57] From

---

49. As adopted by the General Assembly, House Bill No. 916 amended, inter alia, prior subsections (c), (e), (f), (g) and (h) of Section 262 (60 Del.Laws. c. 371 §§ 5–9 [1976] ).

50. See generally, Eliason v. Englehart, Del. Supr., 733 A.2d 944, 946 (1999).

51. Spielberg v. State, Del.Supr., 558 A.2d 291, 293 (1989).

52. Coastal Barge Corp. v. Coastal Zone Indust. Control Bd., Del.Supr., 492 A.2d 1242, 1246 (1985).

53. 10 Del.C. § 372(a) (emphasis supplied). Court of Chancery Rule 135 is to the same effect.

54. 22 Del.Laws c. 449 (1903). See Del. Revised Code 1915 § 3860; Del. Revised Code 1935 § 4383; 10 Del.C. § 372 (1953).

55. See Gonsalves I, 701 A.2d at 360–61. See also Calio, Joseph Evans, New Appraisals of Old Problems: Reflections on the Delaware Appraisal Proceeding, 32 Am.Bus.L.J. 1, 12 n. 44 (1994).

56. 44 Del.Laws c. 125 § 6. Gonsalves I, 701 A.2d at 360.

57. 8 Del.C. § 262(e) (1943). See Southern Production Co., Inc. v. Sabath, Del.Supr., 87 A.2d 128, 133–34 (1952); In re General Realty & Utils. Corp., Del.Ch., 52 A.2d 6, 10–11 (1947).

1943 to 1976, Section 372 continued to remain irrelevant to statutory appraisal proceedings. The 1943 amendments to the appraisal statute were the exclusive authority creating the special appraisal master position and alone defined its function.

 In interpreting a statute, this Court gives considerable deference to an official commentary written by the statute's drafters and available to the General Assembly before the statutory enactment.[58] We have already reviewed the reasons for the 1976 amendments that are set forth in the Commentary. There was a concern, based on experience with the 1943–1976 practice, that the "two-step procedure [was] wasteful of time and money. Thus, [the] proposed [statutory] modifications ... provide for the streamlining of the appraisal process by the elimination of the appraiser."[59] In fact, since the 1976 amendments, apparently no Chancellor or Vice–Chancellor has appointed a master in an appraisal case.

Nevertheless, the successor judge held that "the 1976 amendments to Section 262(e) did not strip from the Court of Chancery all power to appoint special appraisal experts or masters in appraisal proceedings." According to the successor judge, "the 1976 amendments removed the *requirement* of special masters in appraisal proceedings." We have concluded that, if the General Assembly had meant only to modify the prior practice by converting a mandatory two-step process into an optional one or two-step procedure at the Court of Chancery's discretion, it would not have used the word "eliminate" to describe its intention.

 Our conclusion is supported by the legislative history set forth earlier in this opinion.[60] "The legal history of a statute, including prior statutes on the same subject, is a valuable guide for determining what object an act is supposed to achieve" because frequently legislative enactments are not accompanied by a contemporaneous Commentary.[61] In this case, we are fortunate to have definitive guidance from both of those authoritative sources. In *Gonsalves I*, after reviewing both the history of the appraisal statute and the Commentary, we held that in "1976, the General Assembly *eliminated* the role of the Appraiser by enacting a new version of DGCL § 262, which provided 'the *Court* shall appraise the shares....' "[62]

 The General Assembly enacted amendments to the Delaware statutory appraisal process in 1976 that were intended to *eliminate* the prior practice of having an appraiser functioning as a master and to convert a two-step procedure into a unitary judicial process. Courts are bound to recognize and enforce the exclusionary intent of legislative enactments.[63] "Courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature."[64]

---

58. *Acierno v. Worthy Bros. Pipeline Corp.*, Del. Supr., 656 A.2d 1085, 1090 (1995); *State v. Cooper*, 575 A.2d 1074, 1077 (1990); *Siegman v. Columbia Pictures Entertainment, Inc.*, Del. Ch., 576 A.2d 625, 634 (1989).

59. H.RE. 916, 128th G.A.2d Sess., Commentary at 10–11. *See also* S. Samuel Arsht & Lewis S. Black, *Analysis of The 1976 Amendments To The Delaware Corporation Law*, (Prentice–Hall 1976) at 392; David A. Drexler, Lewis S. Black, Jr. & A. Gilchrist Sparks, III, *Delaware Corporation Law and Practice* (1999) § 36.06 at 36–13 n. 72. *See generally Gonsalves I*, Del.Supr., 701 A.2d 357, 360–61 (1997).

60. *See* Randall S. Thomas, *Revising The Delaware Appraisal Statute*, 3 Del.L.Rev. 1 (2000). *See also* Robert B. Thompson, *Exit, Liquidity, and Majority Rule: Appraisal Role in Corporate Law*, 84 Geo.L.J. 1 (1995).

61. 2A Norman F. Singer, *Sutherland Statutory Construction* § 48.03 at 315 (5th ed.1992).

62. *Gonsalves I*, 701 A.2d at 360–61 (emphasis added). *Accord Paskill v. Alcoma Corp.*, Del. Supr., 747 A.2d 549, 555 n. 31 (2000).

63. *See Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982).

64. *Id.*

In *Gonsalves I*, we concluded the role of the Court of Chancery has evolved over time to the present requirement that it independently determine the value of the shares that are the subject of the appraisal action.[65] It is beyond peradventure that the unambiguous mandate of the language in the appraisal statute now requires such proceedings to be conducted by the Court of Chancery's jurists *ab initio*, *i.e.*, exclusively by the Chancellor and Vice–Chancellors.[66] Accordingly, we hold that the reference of an *entire* appraisal proceeding and the use of masters to determine the ultimate valuation are not permitted by the present statutory appraisal scheme.[67]

### Court–Appointed Expert

This statutory appraisal proceeding must be retried without the use of a master. To determine the ultimate issue of value, the next question presented relates to the role of any court-designated expert witness that the successor judge may decide to appoint. In *Shell Oil*, this Court held that "the Court of Chancery has the inherent authority to appoint neutral expert *witnesses*" to assist it in appraisal cases.[68]

■■■ The successor judge concluded that if the Court of Chancery has the inherent authority to appoint experts, it may "define the nature and scope of the duties to be performed" by the expert. The successor judge authorized the "special court-appointed expert witness" to discharge the following quasi-judicial functions: "to hold hearings or demand briefing at his ... discretion"; to require the submission of evidence and arguments; to petition the Court of Chancery to open the record; to decide in the first instance what evidence is material and contested pursuant to Court of Chancery Rule 63; to decide in the first instance whether the testimony and report of Technicolor's witness Klopfenstein is admissible pursuant to Delaware Rules of Evidence 702 and 703; to otherwise adopt or reject "legal and factual arguments" made by the parties; to decide which parts of the original trial judge's 1990 opinion are tainted by his legal error and to rely on findings found to be untainted; to issue an appraisal report; and to respond in the first instance to exceptions thereto proffered by the parties. According to the successor judge, his special court-appointed expert witness "will function much like a special appraisal Master." Nevertheless, the successor judge will also require that the special court-appointed expert witness testify and be cross-examined by the parties' attorneys.

The Court of Chancery's authority to appoint an independent expert does not include the power to establish a process whereby that court-appointed expert witness "will assume for all practical purposes the functions of a court-appointed appraiser."[69] The 1976 amendments to the appraisal statute eliminated the role of masters irrespective of the nomenclature used for such assignments.[70] This Court has

**65.** *Gonsalves I*, 701 A.2d at 361. *Accord M.G. Bancorporation, Inc. v. Le Beau*, Del.Supr., 737 A.2d 513, 525 (1999). *See In re Appraisal of Shell Oil Co.*, Del.Supr., 607 A.2d 1213, 1221 (1992); *Weinberger v. UOP, Inc.*, Del. Supr., 457 A.2d 701, 713–14 (1983).

**66.** *M.G. Bancorporation, Inc. v. LeBeau*, 737 A.2d at 525.

**67.** *DiGiacobbe v. Sestak*, Del.Supr., 743 A.2d 180, 182 (1999). To the extent that there is any non-valuation role for a master in a statutory appraisal proceeding, the scope is limited and discrete, such as, making recommendations on pretrial issues.

**68.** *In re Appraisal of Shell Oil Co.*, Del.Supr., 607 A.2d 1213, 1222–23. *Accord Gonsalves I*, Del.Supr., 701 A.2d 357, 362 (1997).

**69.** David A. Drexler, Lewis S. Black, Jr. and A. Gilchrist Sparks, III, *Delaware Corporation Law and Practice* § 36.06, at 36–14 (12th ed. 1999).

**70.** *See* J. Travis Laster, *An Appraiser By Any Other Name: The Delaware Court of Chancery Appoints an Expert To Determine Fair Value*, Insights, May 1999, at 20.

been explicit in characterizing the Court of Chancery's power to appoint experts as "witnesses." [71]

In this case, the successor judge's erroneous designation was compounded when he decided to assign the quasi-judicial role of a master and the neutral rule of a court-appointed expert witness to the same individual in the same proceeding. The prospect of having one person discharge inherently inconsistent multiple functions in a single judicial proceeding invokes visions of such mythological creatures as Janus [72] or Cerberus.[73] This Court has consistently held that a judge cannot preside and testify as a witness during the course of the same proceeding.[74] Similarly, we have held persons who perform a quasi-judicial function during one phase of a proceeding cannot be called to testify later as a witness.[75]

In *Shell Oil,* where this Court originally recognized the Court of Chancery's power to appoint experts, we stated that it paralleled the authority conferred upon federal trial judges in Federal Evidence Rule 706.[76] Those federal provisions were not mandatory but recommended to the Court of Chancery as "helpful guidelines where such an appointment is contemplated." [77] Our holding in *Shell Oil* was explicitly limited, however, to the appointment of persons to serve as "expert witnesses." As we stated:

> A court appointed expert is subject to the same standards which govern other expert witnesses under the Delaware Rules of Evidence. The expert must

advise the parties of all findings [*see* Ct.Ch.R. 26(a)(4) ] and submit to depositions. Once trial commences, it is incumbent upon the trial judge to arrange for the court's expert witness to testify if neither party calls him as a witness. The court's expert must be subject to cross-examination by both parties, even if one party chose to call him as its witness.[78]

On November 10, 1999, this Court amended the Delaware Uniform Rules of Evidence to add new Rule 706, relating to court-appointed experts:

### Rule 706. Court-appointed experts.

*(a) Appointment.* The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each

**71.** *In re Appraisal of Shell Oil Co.,* 607 A.2d at 1223; *Gonsalves I,* 701 A.2d at 362.

**72.** A Roman God that is represented artistically with two opposite faces.

**73.** A three-headed dog that in Greek mythology guards the entrance to Hades.

**74.** *See McCool v. Gehret,* Del.Supr., 657 A.2d 269 (1995).

**75.** *See Brooks v. Johnson,* Del.Supr., 560 A.2d 1001 (1989).

**76.** When *Shell Oil* was decided, there was no Delaware rule that paralleled Federal Rule 706. This Court suggested that the Court of Chancery "consider the adoption of a rule, modeled after Federal Rule 706." *In re Appraisal of Shell Oil Co.,* 607 A.2d at 1223.

**77.** *In re Appraisal of Shell Oil Co.,* 607 A.2d at 1222.

**78.** *Id.*

party, including a party calling the witness.[79]

Rule 706 became "effective immediately." Thus, Rule 706 will apply to the further proceedings in this case.[80] When this matter is remanded, the successor judge's authority to appoint an expert witness must be exercised in conformity with Delaware Rule of Evidence 706. To the extent that Rule 706 is relatively new, the precedents established by the federal courts will provide persuasive guidance.

### Gatekeeping Responsibility

During the original trial, Cinerama objected to the admissibility of the testimony and opinions of an expert called by Technicolor, Professor Bruce Klopfenstein. The original trial judge decided to hear the Klopfenstein testimony, but ruled that Cinerama would be entitled to move to strike in the post-trial briefing. Cinerama's post-trial briefs renewed its motion to exclude Klopfenstein's testimony. Although the appraisal opinion of the original trial judge characterized Klopfenstein's testimony as being as "close to pseudo science as anything I have encountered," he did not rule on Cinerama's motion to strike it from the record.

■ Cinerama renewed its motion to strike Klopfenstein's testimony in the briefing on remand. The successor judge

deferred consideration. He delegated to the expert/master the task of "mak[ing] the initial determination whether the Klopfenstein testimony and report is reliable and relevant." The successor judge's decisions to delegate initial responsibility to its appointed financial expert for ruling on Cinerama's motion to strike constitutes legal error.

■ Delaware Rules of Evidence 702 and 703 requires a trial judge to act as a "gatekeeper" and to screen scientific, technical or specialized opinion evidence in order to exclude from consideration such evidence as it finds to be unreliable as a matter of law.[81] Cinerama's motion to strike the Klopfenstein testimony raises issues of relevance and reliability under Rules 702[82] and 703.[83] Where, as here, the factual basis, data, principles [and] methods of an expert or "their application" in connection with his opinion are called into question, "the trial judge *must* determine whether the testimony has a 'reliable basis in the knowledge and experience óf [the relevant] discipline.' "[84]

Last year, this Court adopted the holdings of *Daubert*[85] and *Carmichael*[86] as the correct interpretation of Delaware Rule of Evidence 702 generally and for the admission of expert testimony in the specific context of determining the acceptability of

**79.** D.R.E. 706.

**80.** *Cf.* D.R.E. 1103.

**81.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 589, 113 S.Ct. 2786. *Accord M.G. Bancorporation, Inc. v. LeBeau*, 737 A.2d at 522; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 147, 119 S.Ct. 1167; *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

**82.** Rule 702 provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

**83.** Rule 703 provides, in relevant part, that the "facts or data in the particular case on

which an expert bases an opinion or inference" if "of a type reasonably relief upon by experts in the particular field in forming opinions or inferences upon the subject ... need not be admissible in evidence."

**84.** *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 147, 119 S.Ct. 1167 (emphasis supplied, quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 592, 113 S.Ct. 2786.) *Accord M.G. Bancorporation, Inc. v. LeBeau*, 737 A.2d at 523.

**85.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**86.** *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

a valuation theory or technique in an appraisal proceeding.[87] In the event that Technicolor decides to call Klopfenstein as an expert witness at the new trial, the federal precedents will be didactic. We have no doubt that any motion Cinerama makes before or during trial will be decided promptly by the successor judge.

### Relevant Post–Merger Evidence

The pre-merger Perelman Plan expressly contemplated the sale of certain Technicolor divisions during 1983 and forecast no less than $50 million in cash proceeds.[88] By December 1982, the forecast was $54 million.[89] It is undisputed that MAF actually realized $55.7 million in cash from asset sales during 1983.[90]

 Cinerama argues that the 1983 asset sales are the results of known pre-merger matters which are admissible as evidence to prove the merger date value of Technicolor. Cinerama submits that the actual 1983 sale proceeds represent a timely validation of the pre-merger forecast that at least $50 million would be realized from asset sales. Accordingly, Cinerama submits that the Court of Chancery erred by rejecting its argument that, in this case, the appraisal process upon remand for a new trial should incorporate a projection of no less than $50 million in cash proceeds from asset sales. We have concluded that Cinerama's argument is correct. In *Gonsalves I*, this Court held that post-merger evidence is admissible "to show that plans in effect at the time of the merger have born fruition." [91]

### Conclusion

The interlocutory judgments of the Court of Chancery are reversed. This matter is remanded for further proceedings in accordance with this opinion.

87. *M.G. Bancorporation, Inc. v. LeBeau*, Del. Supr,, 737 A.2d 513 (1999). *Accord Paskill Corp. v. Alcoma Corp.* 747 A.2d at 557.

88. *Technicolor IV*, Del.Supr., 684 A.2d 289, 293 (1996).

89. *Id.*

90. *Cede & Co. v. Technicolor, Inc.*, Del.Ch., C.A. No. 7129, 1990 WL 161084, Allen, C., slip op. at 4 (Oct. 19, 1990).

91. *Gonsalves I*, Del.Supr., 701 A.2d 357, 362 (1997). *See also Ross v. Proco Management, Inc.*, Del.Ch., C.A. No. 6146, 1983 WL 17991, Hartnett, V.C., slip op. at 5–6 (May 23, 1983). *Accord Cavalier Oil Corp. v. Harnett*, Del.Ch., C.A. Nos. 7959, 7960, 7967, 7968, 1988 WL 15816, Jacobs, V.C., slip op. at 39 (Feb. 22, 1988), *aff'd*, Del.Supr., 564 A.2d 1137 (1989) ("post-merger data may be considered" if it meets the *Weinberger* standard pertaining to non-speculative evidence); *Kaye v. Pantone, Inc.*, Del.Ch., C.A. No. 5466, 1981 WL 15072, Hartnett, V.C., slip op. at 5–6 (Oct. 6, 1981) (discovery of documents generated up to three years after a merger permitted because such post-merger evidence might prove the value of matters that were in progress prior to the merger); *Tannetics, Inc. v. A.J. Indus., Inc.*, Del.Ch., C.A. No. 5306, 1979 WL 2700, Marvel, C., slip op. at 8 (July 17, 1979) (contract awarded after merger taken into account because established "market dominance" held to have assured its award).