# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEREL HARRISON, | § | No. 535, 2016 |
| | § | |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | ID. No. 1508020051 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |
| | § | |

Submitted: August 16, 2017
Decided: September 1, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

On this 1st day of September 2017, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1) Appellant, Jerel Harrison, appeals from a Superior Court bench ruling finding him guilty of Assault in the Second Degree. A defense which he asserted at trial was the defense of justification, i.e. self-defense. He makes one claim on appeal. He contends that the Superior Court erred in denying his Motion for Reargument because the Court made an erroneous assumption that Harrison had the burden to prove his justification defense by a preponderance of the evidence.

(2)  On August 13, 2015, Jerel Harrison and Malcolm Brown, both members of the University of Delaware football team, attended a preseason practice.  At the time, Harrison was a fifth-year senior and played offense, while Brown was a sophomore and played defense.  Both men had full athletic scholarships to the University of Delaware.  Because Harrison was a wide receiver and Brown was a corner back, they regularly competed head to head in practice, with Brown's job being to keep Harrison from catching the ball.  Harrison testified that during one play at practice that day, Brown grabbed Harrison's face mask, which is an illegal move.  Harrison told Brown that since he would not do that in a game, he should not do it at practice.  Brown and several other witnesses testified that nothing out of the ordinary happened during practice.  Brown did note, however, that he prevented Harrison from catching the ball during one of the plays, and Harrison said something along the lines of, "don't put your hands on me like that."[1]  Brown also denied grabbing Harrison's face mask during practice.

(3)  At the end of practice, the offense and defense separated - the defensive players went to soak in the ice tubs, which were located underneath the bleachers, while the offensive players remained on the field.  After the defensive players were in the ice tubs for approximately ten minutes, those players went to the locker rooms

---

[1]  App. to Appellant's Opening Br. at 046.

to change, and the offensive players got into the ice tubs.

(4) While the players on defense were in the locker rooms changing their clothes, and the players on offense were supposed to be in the ice tubs, Harrison, an offensive player, entered the locker room. Harrison testified that he went into the locker room to put down his equipment before he went to the indoor cold tubs located in the training room. He stated that he preferred to use these tubs instead of the tubs under the bleachers because they were single-person tubs.

(5) At this point, the State's version of events and Harrison's version of events differ. Brown testified that he was at his locker changing his clothes when Harrison came into the locker room through a door located near Brown's locker. Harrison then came over to Brown, said something to him, and then struck Brown in the head with his helmet, which he was holding in his hand. Brown did not recall being hit, and said the only thing he remembered after Harrison saying something to him is being picked up off of the floor and walking to the ambulance.

(6) Harrison testified that as he attempted to walk to his locker, which was beyond Brown's locker, Brown stood in the middle of the aisle and stepped in front of him. As Harrison attempted to walk around Brown, the two brushed shoulders. Harrison testified that Brown then said something along the lines of, "I told you

3

never to touch me," and then struck Harrison in the head.[2] Harrison testified that he "responded in a physical way" and that he did not recall how he specifically responded.[3] He then said he retreated out of the locker room because he was "terrified," and that he was confused and disoriented as a result of being hit in the head.[4] After Harrison was arrested, he was evaluated by Department of Correction medical staff. Harrison's medical records reflect that he told the DOC staff that "he fell while fighting" and was "unable to remember when and how."[5] At a later time, he told the medical staff that "he fell and hi[t] his head on the ground while playing sports."[6] His DOC medical records also stated, "no lacerations or bumps noted to his head."[7]

(7) Several of Harrison's and Brown's teammates also testified at trial. Khaliq Gatson, who played defense with Brown, testified that he saw Harrison and Brown exchange words near Brown's locker, but could not hear exactly what they were saying. He then saw Harrison swing his helmet and strike Brown in the head, and Brown fell to the ground. Gatson testified that he did not see Brown strike Harrison first. Simbarshe Gwashawvanhu, also a defensive player, testified that he

---

[2] *Id.* at 066.
[3] *Id.*
[4] *Id.* at 066, 076, 078.
[5] *Id.* at 076.
[6] *Id.* at 074.
[7] *Id.* at 075.

4

saw Harrison and Brown arguing near Brown's locker, and then saw Harrison swing and strike Brown. Brown dropped to the floor. Gwashawvanhu could not recall whether Harrison had anything in his hand, but testified that he did not see Brown strike Harrison first.

(8) Brown sustained a concussion with a brief loss of consciousness, a fractured jaw, and a laceration on his lip which required stitches. His jaw fracture required surgery, where doctors inserted two titanium plates and eight screws into his jaw. He was unable to eat solid foods for eight weeks and lost twenty-five pounds. Brown was unable to play football for the entire season.

(9) Harrison was indicted on one count of Assault in the First Degree and one count of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"). Following a four-day bench trial, Harrison was found guilty of Assault in the Second Degree, a lesser-included offense of Assault in the First Degree. He was found not guilty of PDWDCF. On April 4, 2016, Harrison filed a Motion for Reargument, which was denied by the Superior Court on October 6, 2016. Harrison was sentenced to eight years at Level 5 incarceration, suspended after six months, followed by eighteen months at Level 3. This appeal followed.

(10) As mentioned, Harrison asserted a justification defense. He claims that the Superior Court made an erroneous assumption that he had the burden to

5

prove his justification defense by a preponderance of the evidence. "To the extent that we examine the trial judge's legal conclusions, we review the trial judge's determinations *de novo* for errors in formulating or applying legal precepts."[8] "In any appeal, the factual findings of a trial judge will not be set aside by a reviewing court unless those factual determinations are clearly erroneous."[9] "When factual findings are based on determinations regarding the credibility of witnesses, however, the deference already required by the clearly erroneous standard of appellate review is enhanced."[10]

(11) Under 11 *Del. C.* § 464, "[t]he use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion."[11] Because justification is not an affirmative defense, a defendant need not prove the defense by a preponderance of the evidence,[12] but is required present "some credible evidence supporting the defense."[13] "Evidence supports a defense when it tends to establish the existence

---

[8] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).

[9] *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 491 (Del. 2000).

[10] *Id.*

[11] 11 *Del. C.* § 464(a).

[12] "When a defense declared by this Criminal Code or by another statute to be an affirmative defense is raised at trial, the defendant has the burden of establishing it by a preponderance of the evidence." *Id.* at § 304(a).

[13] *Id.* at § 303(a).

of each element of the defense."[14] If a defendant presents some credible evidence supporting a defense, "the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find that the evidence raises a reasonable doubt as to the defendant's guilt."[15] Since this was a bench trial jury instructions are not involved, but the principle is the same.

(12) Prior to trial, the Superior Court judge asked Harrison's trial counsel (referred to as "Counsel" in the excerpt below), "[A]re we agreed the burden is preponderance of the evidence for the justification defense or is it a different burden?"[16] He responded, "I believe it's preponderance, Your Honor."[17] After some brief discussion on the point, the State agreed that the burden was on the defendant to demonstrate his justification defense by a preponderance of the evidence, and the bench trial began. After the trial, when the judge was delivering her verdict, the following discussion took place:

> Court: And just to be clear, the State must prove each element of the crime with proof beyond a reasonable doubt. And the defendant must establish justification by preponderance of the evidence.
>
> Pursuant to Superior Court Criminal Rule 23(c), my general findings are as follows: I

---

[14] *Id.* at § 303(b).
[15] *Id.* at § 303(c).
[16] App. to Appellant's Opening Br. at 012.
[17] *Id.*

7

do not find beyond a reasonable doubt that the defendant used his helmet to strike the victim; and, therefore, he is not guilty as to Count II.

With respect to Count I, I find the defendant guilty of the lesser included offense of assault in the second degree. That is the court's verdict.

Can counsel approach.

(The following sidebar conference was held.)

Counsel: It's not preponderance of the evidence on the part of the defendant. The State has to disprove it beyond a reasonable doubt.

Court: Okay. I'll correct that.

Counsel: Because there's four cases that deal with that. One came out and they changed that and so no.

Court: I asked counsel about that at the start of the case. I'm not clear on why - - I asked counsel about whether it was preponderance of the evidence [f]or justification and nobody said that. *But it doesn't change the outcome, even under that standard. Okay?*

\* \* \*

Court: Let me make an amendment to my finding, actually, a correction. *I find that the State disproved justification beyond a reasonable*

8

*doubt.*[18]

(13)  While the Superior Court initially erred when it stated, "the defendant must establish justification by preponderance of the evidence," the judge acknowledged the mistake, articulated the correct standard, and held that the State disproved Harrison's justification defense beyond a reasonable doubt. Harrison argues that he provided credible evidence sufficient to raise a reasonable doubt as to his guilt. Harrison contends that his testimony that Brown struck him first, paired with his observed physical condition following the incident, was sufficient to raise a reasonable doubt. However, while Harrison did offer some evidence to support his defense, it was up to the Superior Court judge as the finder of fact to determine whether that evidence was credible.

(14)  Several witnesses testified that Brown did not hit Harrison first, but that Harrison did strike Brown. Further, Harrison did not tell the medical personnel who examined him following his arrest that he was struck in the head, but instead said that "he fell while fighting" but was "unable to remember when and how,"[19] and also that "he fell and hi[t] his head on the ground while playing sports."[20] The trial judge's determination that the evidence that Harrison presented to support his

---

[18] *Id.* at 105-07 (emphasis added).

[19] *Id.* at 76.

[20] *Id.* at 74.

9

justification defense was not credible was not a clearly erroneous finding given the record. The trial judge articulated the correct standard for a justification defense and held that Harrison was guilty beyond a reasonable doubt under that standard. Therefore, the Superior Court should be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

_____
Justice