# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

POT-NETS LAKESIDE, LLC, )
                          )
         Appellant, )
                          )
                          )
      v. )      C.A. No. S22A-10-001 MHC
                          )
LAKESIDE COMMUNITY )
HOMEOWNERS ASSOC., INC., )
                          )
         Appellee. )

Submitted: July 8, 2024
Decided: July 23, 2024

*Upon Appeal from the Decision of the Arbitrator,*
**AFFIRMED**

## MEMORANDUM OPINION AND ORDER

David C. Zerbato, Esquire, Morton, Valihura & Zerbato, LLC, 3704 Kennett Pike, Suite 200, Greenville, Delaware 19807, Attorney for Appellant

Anthony V. Panicola, Esquire, Community Legal Aid Society, Inc., 840 Walker Road, Dover, Delaware 19904, Attorney for Appellee

**Conner, J.**

## INTRODUCTION

Before the Court is the appeal of manufactured home community owner Pot-Nets Lakeside, LLC ("Landlord") from rent increase justification arbitration under the Manufactured Homes and Manufactured Home Communities Act (the "Act"). Appellee, Lakeside Community Homeowners Association, Inc. ("HOA"), takes the position that the arbitrator correctly decided the issues appealed by Landlord. For the following reasons I affirm the decisions of the arbitrator.

## FACTS AND PROCEDURAL HISTORY

Pot-Nets Lakeside (the "Community") is a manufactured home community with 466 lots located in Millsboro, Delaware. Landlord sought to enhance and improve the Community's lake walk, a boardwalk surrounding the Community's six-acre lake, via a capital improvement project ("Project"). The Act permits manufactured home community owners like Landlord to pass the cost of capital improvements onto residents of manufactured home communities in the form of a beyond CPI-U rent increase.[1] These types of rent increases are heavily regulated by the Act and often challenged by residents.

Landlord informed the Community's residents of the Project resulting in a monthly rental increase of $7.86 beyond CPI-U.[2] The direct cost (actual

---

[1] 25 *Del. C.* 7052.
[2] The parties stipulated that "Landlord is entitled to the CPI-U portion of the rent increase, which is 2.356%."

expenditures) of completing the Project total $219,752.15, of which $5,720 was spent on replacing the lake's outflow drainage pipe. In addition to these direct costs, Landlord sought an 8% return on their investment in the Project, the cost of the Project's depreciation over time, and the cost of income taxes that will need to be paid by Landlord on the increased rent collected from residents ("Indirect Costs").

Unhappy with the proposed rent increase, the HOA requested arbitration pursuant to 25 *Del. C.* § 7053. Relevant to this appeal, the HOA argued at arbitration that the outflow pipe replacement is not a capital improvement and therefore its cost cannot be passed onto the Community residents or otherwise used to justify a rent increase. They further argued the Act does not permit the Landlord to pass the Indirect Costs onto the residents of the Community.

Arbitration was held April 26, 2022. On September 19, 2022, the final decision of the arbitrator was published. The arbitrator made the factual determination that the replacement of the outflow pipe during the project was ordinary maintenance as opposed to a capital improvement to the community and therefore its $5,720 in direct costs are not recoverable by Landlord under the Act. As a matter of law, the arbitrator determined that Landlord could not pass the Indirect Costs onto the residents, finding "the Act does not authorize a community owner like Landlord to include in its recoverable 'cost' for a capital improvement or

3

rehabilitation work the costs beyond the direct costs of the work."[3]  Landlord

appealed that finding of fact and findings of law.

## STANDARD OF REVIEW

The Delaware Code commands "[t]he appeal shall be on the record and the

Court shall address written and/or oral arguments of the parties as to whether the

record created in the arbitration is sufficient justification for the arbitrator's

decisions and whether those decisions are free from legal error."[4]

Our Courts have clarified, "substantial evidence review is the appropriate

standard of review for the arbitrator's factual findings."[5]  It calls on the Court to

ascertain if the record contains substantial evidence to support the arbitrator's

findings.[6]  "Substantial evidence is relevant evidence that a reasonable mind might

accept as adequate to support a conclusion."[7]  Deference is given to the factual

findings of the arbitrator,[8] when conducting substantial evidence review:

> This Court does not sit as the trier of fact, nor should the Court
> substitute its judgment for that rendered by the [arbitrator].  The Court
> must affirm the decision of the [arbitrator], if properly supported, even
> if the Court might have, in the first instance, reached an opposite

---

[3] Arbitrator's Decision at 6.

[4] 25 *Del. C.* 7504.

[5] *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Assoc.*, 210 A.3d 725, 731, n.37 (Del. 2019).

[6] *Rehoboth Bay Homeowners' Ass'n v. Hometown Rehoboth Bay, LLC,* 252 A.3d 434, 441 (Del. 2021).

[7] *Id.* (quoting *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[8] *Rehoboth Bay Homeowners' Ass'n v. Hometown Rehoboth Bay, LLC*, 2020 WL 1316831, at *2 (Del. Super. Ct. Mar. 16, 2020), aff'd in part, rev'd in part, 252 A.3d 434 (Del. 2021).

4

conclusion. Only when there is no satisfactory proof in support of a factual finding of the [arbitrator] may this Court overturn it.[9]

Additionally, the Court must determine whether the arbitrator's findings are free from legal error. "Freedom from legal error exists when the [arbitrator] 'applied the relevant legal principles.'"[10]

## ANALYISIS

"The Rent Justification Act is effectively a rent control statute."[11] Subchapter VI of the Act governs rent increase justifications, its purpose is to "accommodate the conflicting interests of protecting manufactured homeowners, residents, and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable, and fair return on their property."[12]

Section 7052(d) exhaustively lists the factors which may justify a rent increase beyond CPI-U. "The completion and cost of any capital improvements or rehabilitation work in the manufactured home community" is one such justification for a beyond CPI-U increase in rent.[13] "The Act permits a rent increase which fully compensates a community owner for the cost of capital improvements."[14]

---

[9] *Donovan Smith HOA v. Donovan Smith MHP, LLC*, 2017 WL 6507188, at *1 (Del. Super. Ct. Dec. 19, 2017), aff'd on other grounds, 190 A.3d 997 (Del. 2018).
[10] *Id.*
[11] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n*, 149 A.3d 227, 234 (Del. 2016)
[12] 25 *Del. C.* § 7050.
[13] 25 *Del. C.* § 7052(d)(1).
[14] *Rehoboth Bay Homeowners' Ass'n*, 252 A.3d 434, 437 (Del. 2021).

A Landlord may not increase rent beyond CPI-U for the costs of ordinary repair, replacement, or maintenance.[15]  Our Supreme Court has recently explained the distinction between capital improvements and ordinary repair, holding "…it makes sense to characterize an 'ordinary repair, replacement, and maintenance' as a regular, normal, and usual repairing of property, while a 'capital improvement' is to acquire a long-term, nonrecurring asset or improve or enhance such an asset already in existence."[16]

## I.  Substantial evidence exists to support the arbitrator's finding that the outflow pipe replacement was ordinary work as opposed to a capital improvement.

The record indicates that the outflow pipe replacement was not an integral (let alone planned) part of the Project.  Landlord's witness, Robert Tunnell, III, testified "[w]ithout [pumping the pond], we wouldn't be able to do work on this pipe et cetera. So it was done in conjunction with the rest of that project."[17]  It appears from the record that the Project required the draining of the lake which provided Landlord with a convenient opportunity to replace the already existing pipe.

---

[15] 25 *Del. C.* §7052(d)(1).
[16] *Rehoboth Bay Homeowners' Ass'n*, 252 A.3d 434, 442 (Del. 2021)
[17] Arbitration Tr. at 124.

Mr. Tunnel further testified "… we've always replaced section of the pipe that would then allow the water to leave the pond more normally than it was before."[18] This testimony that the Landlord has "always replaced" portions of the pipe support the arbitrator's finding that the new pipe is not an improvement or enhancement, but instead "ordinary" non-compensable repair "occurring in the regular course of events."[19]

## II. The arbitrator did not err as a matter of law in holding that Landlord may only recover the direct costs incurred on the project.

Section 7052 specifically enumerates what may be used to legally justify a beyond CPI-U rent increase and noticeably does not include the Indirect Costs sought by Landlord.[20] While § 7050 admittedly recognizes the rights of manufactured home community owners to a "fair return on their property", this language exists more broadly in the context of the Act's purpose section.[21] When read as a whole it is clear that subchapter VI's intent is to strike a balance between the legitimate business interests of the community owners and the equally legitimate concerns held by the residents over living costs.

---

[18] Arbitration Tr. at 118-119.
[19] *Rehoboth Bay Homeowners' Ass'n*, 252 A.3d 434, 442 (Del. 2021) (quoting ORDINARY, Black's Law Dictionary (11th ed. 2019)).
[20] 25 *Del. C.* § 7052.
[21] 25 *Del. C.* § 7050.

"As a general rule of statutory construction, when a specific statute is enacted that appears to conflict with an existing general statute, the subsequently enacted specific statute is controlling."[22]  Not only is § 7052 more specific than § 7050, but it has been amended more recently.[23]  Section 7050 cannot be read to guarantee manufactured home community owners a right to a return on all investments they make in their communities as appellant seems to broadly argue.  Therefore, the Court agrees with the arbitrator that "the slender reed that is Section 7050 cannot support the substantial weight of the landlord's argument…."[24]

Additionally, I find it compelling that despite the Act's frequent amendments no language permitting Landlord to recover Indirect Costs has been included in § 7052 or anywhere in the Act.  If the General Assembly would like to permit community owners to pass the costs of their increased income taxes, the depreciation of their investments, as well as a return on those investment onto community residents in the form of a monthly rent increase, they may freely amend the Act.  However, absent any express language in § 7052 permitting Landlord to earn a return on investment in a capital project I find the Arbitrator has fully compensated Landlord for the costs of the Project.

---

[22] *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 494 (Del. 2000).
[23] The current version of § 7050 took effect on December 10, 2019.  The current version of § 7052 took effect July 1, 2022.  This action was appealed to this Court in October of 2022.
[24] Arbitrator's Decision at 7.

## CONCLUSION

It is easy to see why appeals from rent justification arbitration have been referred to as trivial by his Court in the past.[25] This appeal is over a rent increase so small that it was referred to as "peanuts" by the only Community resident who testified for the HOA at arbitration.[26] However, lurking in the background of this appeal are divergent parties seeking to set the Act's common law interpretations in ways that suit their interests. Therefore, no matter how nominal an appeal under the Act may appear, a faithful review is necessary to ensure the facilitation of effective justice. After an exhaustive review of the record before the Court and relevant law I find the final decisions of the arbitrator below are supported by substantial evidence within the record and were made in consideration of the relevant legal principles, therefore I **AFFIRM**.

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*

Mark H. Conner, Judge

cc: Prothonotary

---

[25] "Arguments regarding the interpretation of the Act sometimes border on batrachomyomachy." *Rehoboth Bay Homeowners' Ass'n*, 2020 WL 1316831, at *1 (Del. Super. Ct. Mar. 16, 2020), aff'd in part, rev'd in part, 252 A.3d 434 (Del. 2021).
[26] Arbitration Tr. at 264.