# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: July 21, 2023
Decided: July 31, 2023

Matthew Hicks, Esquire
Deputy Attorney General
DEPARTMENT OF JUSTICE
820 N. French Street
Wilmington, Delaware 19801

Drequan Queen, *pro se*
42 Chaddwyck Boulevard
New Castle, Delaware 19720

RE: *State v. Drequan Queen*
 Case ID. No. 2008012902
 Mr. Queen's Motion to Suppress

Dear Messrs. Queen and Hicks:

The Court provides this Letter Opinion and Order as its decision on Mr. Queen's

Motion to Suppress and its supplements. The Court has considered all filings that

Mr. Queen has docketed in his quest to exclude certain physical evidence seized

from his person and his vehicle. This includes Mr. Queen's applications (D.I. 8; D.I.

17; D.I. 31; D.I. 49; D.I. 51); the State's responses thereto

(D.I. 12; D.I. 35; D.I. 48); the testimony provided at the evidentiary hearing on

Mr. Queen's applications (D.I. 46; D.I. 47); the parties' arguments; and, the

applicable law.

For the reasons explained below, the motion is **DENIED**.

## I. FACTUAL BACKGROUND

Beginning in July 2020, Mr. Queen was investigated by the Wilmington Police Department ("WPD") as a potential drug dealer based on information from a confidential informant.[1] During the second week of August, police conducted a controlled buy where a confidential informant bought heroin directly from Mr. Queen.[2]

Then, on August 26, 2020, police stopped and searched Mr. Queen at the intersection of 5th and Jefferson Street.[3] Concurrent with that stop-and-search, police conducted a consent-search of a target apartment associated with Mr. Queen.[4] In the apartment, officers found heroin.[5]

The police also deployed a canine to sniff Mr. Queen's nearby vehicle.[6] The

---

[1]  1/19/23 Hr'g Tr. at 7-8 ("We received information from a confidential informant that the defendant, Mr. Queen, was someone dealing narcotics in the area of Fourth and Fifth and Jefferson.") (D.I. 47).

[2]  *Id.* at 13-14 ("We observed the CI walk up to the defendant, make a hand-to-hand transaction and leave the defendant. And we observed the defendant walk back into the apartment building. And we observed the CI meet back with us at a meeting place.").

[3]  *Id.* at 15-16 ("We stopped him, detained him incident to arrest. We had a search warrant for the building and for him. We detained him incident to arrest. We searched him and placed him in the vehicle.").

[4]  *Id.* at 23-26 ("We learned that the defendant comes there often she says and tells her to leave when he's there. She also said that she had no knowledge of any illegal narcotics in her apartment. And she gave us consent to search it.").

[5]  *Id.*

[6]  *Id.* at 27-28.

canine sniff yielded a positive alert for narcotics.[7]  So officers decided to drive the vehicle to the WPD station to conduct a thorough search of it there.[8]  Before conducting that later search, officers applied for and received a warrant from the Justice of the Peace Court.[9]

Police found a firearm hidden in the trunk of the vehicle.[10]

## II. PROCEDURAL BACKGROUND

Mr. Queen initially was represented by a private defense attorney who docketed a motion to suppress.[11]  The State filed a response to that suppression motion.[12]  And Mr. Queen, through counsel, replied.[13]

Before the hearing on the counseled suppression motion, Mr. Queen moved to proceed *pro se* and for "abeyance."[14]

During Mr. Queen's first hearing on his two *pro se* motions this Court found

---

[7]  *Id.* at 29-32.

[8]  *Id.*

[9]  *Id.* at 30-31.

[10]  *Id.* at 31 ("Q. What did you find in the vehicle?  A. A firearm in the trunk behind the speaker.").

[11]  D.I. 8.

[12]  D.I. 12.

[13]  D.I. 17.

[14]  D.I. 18, 19.  Both of these motions were filed *pro se*.  D.I. 18; D.I. 19.  Before the suppression hearing, private counsel withdrew from representation of Mr. Queen.  D.I. 21.

his motion for continuance was moot, engaged in the required colloquy,[15] and found

Mr. Queen was waiving his right to counsel and wished to proceed *pro se*.[16]

The Court then held two status conferences and, at Mr. Queen's request,

appointed him standby counsel from the Office of Defense Services.[17]

Thereafter, Mr. Queen filed his *pro se* motion to suppress.[18]  The State

responded to that *pro se* application by briefly summarizing certain issues and

directing the Court to the State's response to Mr. Queen's first motion to suppress

filed by his prior counsel.[19]

In mid-January 2023, the Court was set to hear Mr. Queen's suppression

motion but, because he was unprepared, the Court granted Mr. Queen a brief

continuance.

The Court then commenced the suppression hearing,[20] which it had to recess

with instructions to the State to produce documents mentioned during that hearing

---

[15]  *See Briscoe v. State*, 606 A.2d 103, 107-08 (Del. 1992) (explaining the "searching inquiry" a court must conduct when one expresses a wish to proceed *pro se*).

[16]  D.I. 23.

[17]  D.I. 27, 30.

[18]  D.I. 31.

[19]  D.I. 35.  The State "included the April 27th response as an exhibit and adopts all previous arguments submitted in that filing as they relate to the Supplemental Motion to Suppress." *Id.* at 2.

[20]  D.I. 47.

to Mr. Queen and the Court—this included a search warrant issued by a Justice of the Peace for the target Jefferson Street apartment.[21] Before commencing the second part of the suppression hearing, the Court reviewed the documents provided by the State; the Court then took further witness testimony and heard the parties' arguments.[22]

Upon finishing the second part of the suppression hearing, the Court permitted the parties to submit supplemental briefing. And, in course, the parties docketed those supplemental filings.[23]

### III. THE MOTION TO SUPPRESS

While Mr. Queen has asserted a litany of claims in his suppression motion, responses, and supplemental briefing, he confirmed for the Court that he seeks to challenge only the search and seizure of his person and his vehicle that occurred on August 26, 2020.[24]

---

[21]  *Id.* at 77-78.

[22]  D.I. 44; D.I. 46.

[23]  D.I. 48; D.I. 49; D.I. 51. Mr. Queen took an opportunity in his supplemental briefing to seek dismissal of the indictment. D.I. 51 ("I ask that all charges be dismissed due to uncommon police work . . . ."); *see* D.I. 49. The Court later heard argument on what it deemed a motion to dismiss and denied it. D.I. 53.

[24]  D.I. 41.

## IV. STANDARD OF REVIEW

### A. SEARCHES AND SEIZURES INCIDENT TO A WARRANT

On a motion to suppress contesting the validity of a search warrant, the defendant shoulders the burden of establishing that the challenged search or seizure was unlawful.[25] Our Federal and State Constitutions provide that a search warrant may be issued only upon a showing of probable cause.[26]

"It is well-settled that the Court must employ a 'four-corners' test to determine whether an application for a warrant demonstrates probable cause."[27] Under that test, a reviewing court must discern whether the supporting affidavit "set[s] forth sufficient facts on its face for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[28]

---

[25] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005) (citations omitted).

[26] *See* U.S. CONST. amd. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

[27] *Sisson*, 883 A.2d at 876 (citing *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975)).

[28] *Id.* (internal quotation marks and citation omitted); *Blount v. State*, 511 A.2d 1030, 1032-33 (Del. 1986) (stating the supporting affidavit must "set forth sufficient facts to warrant a reasonable

The judicial officer who made the initial finding of probable cause is owed great deference; such a finding won't be "invalidated by a hypertechnical, rather than a common sense, interpretation" of the affidavit.[29] And a reviewing court must view a warrant's application "as a whole and not on the basis of its separate allegations."[30]

## B. AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT

As a general matter, "[a] warrantless search [or] seizure is presumptively unreasonable, subject to certain exceptions."[31] One of those recognized exceptions is the automobile exception. Under the automobile exception, which has been recognized both by the United States Supreme Court and the Delaware Supreme Court, "[p]olice 'may lawfully search [a] vehicle without a warrant' if 'the police have probable cause to believe that an automobile is carrying contraband or evidence' of criminal activity."[32] That probable cause determination is "made by

---

man in concluding that a crime has been committed and that the property sought to be seized would be found in a particular place" (citations omitted)).

[29]   *Cooper v. State*, 228 A.3d 399, 404 (Del. 2020) (quoting *Jensen v. State,* 482 A.2d 105, 111 (Del. 1984)).

[30]   *Jensen,* 482 A.2d at 111 (citations omitted).

[31]   *State v. Roundtree*, 2017 WL 4457207, at *2 (Del. Super. Ct. Oct. 4, 2017) (citing *State v. Hedley*, 593 A.2d 576, 582 (Del. Super. Ct. 1990)).

[32]   *Pollard v. State*, 284 A.3d 41, 46 (Del. 2022) (second alteration in original) (quoting *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985)); *see United States v. Johns*, 469 U.S. 478, 484 (1985)).

evaluating the totality of the circumstances" present.[33]

## C. THE COURT'S FACT-FINDING ROLE IN A SUPPRESSION PROCEEDING

As a general matter, when questions of fact must be resolved, the suppression hearing judge's first responsibility is to determine the historical facts from the testimony presented, physical or documentary evidence, and inferences from other facts.[34] Among other things, "the trial judge, sitting as the finder of fact at a pretrial suppression hearing, determines witness credibility."[35] And "when presented with differing accounts of historical facts, 'it is the [suppression hearing judge's] role to resolve the conflicts in witnesses' testimony and weigh their credibility.'"[36] To do so, the judge might consider any existing objective evidence.[37] She might also consider whether certain proffered testimony is so "inconsistent or implausible on

---

[33] *Pollard*, 284 A.3d at 46 (quoting *Valentine v. State*, 2019 WL 1178765, at *2 (Del. Mar. 12, 2019)).

[34] *See Lopez v. State*, 861 A.2d 1245, 1248-49 (Del. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) (noting that: "The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise.")).

[35] *Turner v. State*, 957 A.2d 565, 570-71 (Del. 2008) (citations omitted).

[36] *Diggs v. State*, 257 A.3d 993, 1006 (Del. 2021) (alteration added) (quoting *Johnson v. State*, 2007 WL 1575229, at *1 (Del. May 31, 2007)). *See Anderson*, 470 U.S. at 575 (explaining the "greater deference [accorded] to the trial court's findings [based on determinations regarding the credibility of witnesses]; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said" (citation omitted)).

[37] *Anderson*, 470 U.S. at 575.

its face that a reasonable factfinder would not credit it."[38]  "In the end though, when weighing the evidence and finding facts, the suppression hearing judge may reach any inferences, deductions and conclusions to be drawn from the evidence."[39]

## V. DISCUSSION

### A. MR. QUEEN WAS SEARCHED PURSUANT TO A VALID SEARCH WARRANT SUPPORTED BY PROBABLE CAUSE.

Before the Court received the search warrant for the apartment and the body of Mr. Queen, the parties had represented that Mr. Queen was stopped and searched without a warrant.  At the first sitting of the suppression hearing, Detective Wiggins testified that he had a warrant to search Mr. Queen as well as to search the apartment.[40]  The State produced that warrant between the first and the second sessions of the suppression hearing.[41]  That warrant was signed on August 21, 2020, by a Justice of the Peace magistrate and authorized the search of both the

---

[38]  *Id.*

[39]  *State v. Jackson*, 2022 WL 18401412, at *2 (Del. Super. Ct. Dec. 28, 2022) (cleaned up).  And a suppression hearing judge's factual findings "can be based upon physical evidence, documentary evidence, testimonial evidence, or inferences from those sources jointly or severally." *State v. Abel*, 68 A.3d 1228, 1232 (Del. 2012) (quoting *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 491 (Del. 2000)).

[40]  1/19/23 Hr'g Tr. at 15-16 ("We stopped him, detained him incident to arrest. We had a search warrant for the building and for him. We detained him incident to arrest. We searched him and placed him in the vehicle.").

[41]  D.I. 43.

Jefferson Street apartment and the body of Mr. Queen.[42]

In Mr. Queen's supplemental filings and argument he says the search "warrant is made up" and the supporting probable cause affidavit is rife with lies.[43] Mr. Queen posits that if Detective Wiggins had a warrant, then he (Mr. Queen) would or should have been presented with that warrant when the August 26th search was conducted.[44] But an extant warrant need not be presented to the target thereof prior to or at the time of a search for the warrant itself or the ensuing search thereunder to be valid.[45] The Court has found that the document entered into evidence during these proceedings is what it purports to be—a search warrant for 416 N. Jefferson and the body of Mr. Queen that was duly authorized by a Justice of the Peace magistrate on August 21, 2020.[46]

Mr. Queen challenges the sufficiency of probable cause in the affidavit to no avail. The affidavit outlines that Detective Wiggins received a tip from a confidential informant that Mr. Queen was selling heroin out of 416 N. Jefferson

---

[42] D.I. 48, Ex. D at 1 (Search Warrant for the body of Mr. Queen and the Jefferson Street Apartment). The warrant gave police ten days to search both the apartment and Mr. Queen. *Id.*

[43] Mr. Queen's Response to State's Supplemental Br. at 1 (D.I. 51).

[44] *Id.*

[45] *See United States v. Grubbs*, 547 U.S. 90, 98-99 (2006).

[46] D.I. 53, Ct.'s Ex. 1 (Search Warrant for the body of Mr. Queen and the Jefferson Street Apartment).

Street, Apartment 3[47] in New Castle County, Delaware.[48]   Officers saw that Mr. Queen frequented the residence.[49]   Thereafter, officers set up a controlled buy during which officers observed Mr. Queen exit 416 N. Jefferson, take items from a location on his person, and sell the confidential informant/controlled buyer heroin.[50]

The magistrate's finding here reflected a proper analysis of the totality of the circumstances that must be accorded proper deference.[51]   The search warrant affidavit no doubt contained sufficient facts on its face for the magistrate to form a reasonable belief that Mr. Queen had engaged in drug dealing and that evidence would be found in the target apartment and/or on his person.

---

[47]   Detective Wiggins testified that the warrant mistakenly said Apartment 2, instead of Apartment 3. 1/19/23 Hr'g Tr. at 59.  This is of no moment; the search of the apartment was consented to by the leaseholder and Mr. Queen does not contest the admissibility of the evidence seized from the target apartment.  That said, the error was merely typographical and does not invalidate the probable cause basis for the warrant or the warrant itself as authorization for the search of Mr. Queen thereunder.  *See United States v. McKay*, 665 Fed.App'x 219, 222 (3d Cir. 2016) (finding clerical error did not invalidate a search warrant and finding sister circuit court support for the proposition that a scrivener's error does not affect the validity of a warrant (citing *United States v. Gary*, 528 F.3d 324, 328-29 (4th Cir. 2008)); *United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008)); *see also State v. Bradley*, 2011 WL 1459177, at *4-6 (Del. Super. Ct. Apr. 13, 2011) (error in description of property to be searched did not invalidate warrant as authority to search the places that were properly described therein).

[48]   D.I. 48, Ex. D ¶¶ 2-3 (Search Warrant for the body of Mr. Queen and the Jefferson Street Apartment Affidavit).

[49]   *Id.* ¶ 3.

[50]   *Id.* ¶¶ 3-5.

[51]   *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (citing *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008)).

### B. The Seizure of Mr. Queen's Vehicle was Supported by Probable Cause.

Mr. Queen contends Detective Wiggins drove his vehicle "from the [s]cene" and "purposely violated the law, acted in bad faith and did an unlawful search and seizure."[52] According to Mr. Queen, the police taking control of his vehicle and driving it to the police station to be searched, amounted to an invalid seizure and tainted search.[53]

After the Jefferson Street apartment was searched and heroin was found therein, officers deployed a canine to sniff Mr. Queen's vehicle that was located on a nearby street.[54] The canine sniff yielded a positive alert for narcotics.[55]

"Police 'may lawfully search [a] vehicle without a warrant' if 'the police have probable cause to believe that an automobile is carrying contraband or evidence' of criminal activity."[56] Here, officers had sufficient probable cause to search and seize the vehicle. Officers had just found heroin in Mr. Queen's stash house apartment

---

[52] Mr. Queen's Response to State's Supplemental Br. at 2.

[53] *Id.* ("They clearly state they drove off in the car meaning the search off [sic] the car was conducted before they got the warrant.").

[54] 1/19/23 Hr'g Tr. at 26-28.

[55] *Id.* at 28-29.

[56] *Pollard*, 284 A.3d at 46 (alteration in original) (quoting *Tatman*, 494 A.2d at 1251); *see Johns*, 469 U.S. at 484.

and a canine alerted them to the presence of narcotics in his car.[57]

But instead of searching the vehicle immediately,[58] officers drove the vehicle to the police station to conduct a thorough search after obtaining a warrant.[59] There was nothing improper about them doing so.[60] And suppression of the evidence seized from Mr. Queen's vehicle is not required.

## VI. CONCLUSION

The search of Mr. Queen's person on August 26, 2020, was conducted pursuant to a warrant issued several days earlier by the Justice of the Peace Court.

---

[57] *See State v. Saunders*, 2012 WL 6915206, at *4 (Del. Super. Ct. Dec. 28, 2012) ("Delaware courts have held that a drug canine 'sniff test', which positively detects the presence of drugs, provides a sufficient basis of probable cause for officers to search the identified source of the odor." (citing *Nelson v. State*, 1998 WL 171534, at *4 (Del. Mar. 30, 1998); *State v. Saunders*, 2000 WL 703021, at *3 (Del. Super. Ct. Mar. 27, 2000))); *see also Arcuri v. State*, 49 A.3d 1177, 1179-80 (Del. 2012) (finding absence of averments regarding a drug dog's pedigree not fatal as the Court may infer such).

[58] The Court finds there may have been some cursory check of the inside of the car before it was moved. But that activity yielded no evidence. In turn, it serves as no basis for its exclusion of the gun found during the later search that was conducted via a valid warrant. *See State v. Spencer*, 2023 WL 3052370, at *6 (Del. Super. Ct. Apr. 24, 2023) ("Because there was no evidence obtained from the allegedly unlawful . . . entry there is nothing to suppress therefrom and the Court will not provide a remedy for that alleged violation via exclusion of evidence from a later wholly-unaffected separate search.")

[59] 1/19/23 Hr'g Tr. at 31-32; D.I. 53, Ct.'s Ex. 2 (Search Warrant for Mr. Queen's car).

[60] *See Tatman*, 494 A.2d at 1253 ("[T]he police officers in this case did not violate the defendant's Fourth Amendment rights by removing the vehicle to the firehouse and conducting the search there."). After delivering the vehicle to the police station, officers secured a search warrant for the vehicle. 1/19/23 Hr'g Tr. at 29-31. But the warrant was a mere prophylactic, which Mr. Queen does not challenge. *State v. Holmes*, 2022 WL 4353455, at *10 n.112 (Del. Super. Ct. Sept. 9, 2022) (discussing that police often seek a warrant as a prophylactic to what otherwise is a proper warrantless search).

That warrant was supported by probable cause. And the temporary seizure and transport of Mr. Queen's vehicle was proper and supported by probable cause. The later search of his vehicle was conducted under authority of a valid warrant. Accordingly, Mr. Queen's Motion to Suppress all evidence seized from his person and vehicle is **DENIED**.

   **IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

Original to Protonotary
cc:   Sonia Augusthy, Esquire (standby counsel)